**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number:  **13-02924-jw**

## ORDER

The relief set forth on the following pages, for a total of 59 pages including this page, is hereby ORDERED.

---

**FILED BY THE COURT**
**07/17/2020**



US Bankruptcy Judge
District of South Carolina

Entered: 07/17/2020

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 13-02924-JW |
| | Chapter 13 |
| Thomas Levi Boyd, | **ORDER** |
| Debtor(s). | |

These matters come before the Court upon the Motion to Reconsider, Alter or Amend this Court's April 26, 2020 Order Granting Debtor's Motion to Reopen Case ("Motion to Reconsider") filed by Thompson Construction Group, Inc. and Roy Laverne Bolyn ("State Court Defendants" or "Defendants") on May 11, 2020; an Objection to Debtor's Claim for Exemption of Personal Injury Claim ("Objection to Exemption") filed by the State Court Defendants on June 3, 2020, and the Application to Employ Mark Bringardner as Personal Injury Attorney filed by Thomas Levi Boyd ("Debtor") on May 5, 2020, to which the State Court Defendants filed objection on May 18, 2020. Debtor filed a response to the Motion to Reconsider on June 4, 2020.

Through their filing of the Motion to Reconsider and Objections to Exemption and Employment, the State Court Defendants are making their first appearances in this case post-closing and subsequent to its reopening. Their appearance in this case is based upon a personal injury lawsuit that Debtor initiated in state court ("Lawsuit" or "Cause of Action") post-petition after suffering significant injuries from an alleged drunk driving accident caused by Roy Bolyn, who was driving a vehicle entrusted to him by his employer, Thompson Construction Group, Inc. The State Court Defendants' only interest in the reopening of Debtor's case appears to be the potential effect that the reopening of the bankruptcy case and amending of his bankruptcy schedules may have on their judicial estoppel defense asserted in the Lawsuit. The judicial estoppel defense is apparently based on Debtor's failure to disclose his interest in the post-confirmation

Lawsuit as a bankruptcy estate asset being inconsistent with Debtor's later prosecution of the lawsuit against them. The State Court Defendants argue that if the bankruptcy case is reopened and amendment of the schedules allowed, it may defeat their judicial estoppel defense, the aim of which is to summarily free them from any liability to Debtor due to the drunk driving accident.

After holding a pre-trial hearing on June 11, 2020 and an evidentiary hearing on June 16, 2020, the Court took the matters under advisement. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. The parties have consented to this Court entering final orders and judgments in these proceedings. Pursuant to Fed. R. Civ. P. 52, which is made applicable to these matters by Fed. R. Bankr. P. 7052 and 9014(c), the Court makes the following findings of fact and conclusions of law.[1]

## FINDINGS OF FACT

1.      On May 16, 2013, Debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code, and Joy S. Goodwin was appointed as the chapter 13 Trustee for the case. Simultaneously with the Petition, Debtor filed his Schedules, Statements and Chapter 13 Plan.  On Schedule B, which lists Debtor's personal property assets, Debtor listed no contingent or unliquidated claims existing at that time.

2.      Debtor subsequently filed a pre-confirmation amendment to the chapter 13 Plan on July 23, 2013, which supplemented all of the provisions of the chapter 13 plan by increasing payments from Debtor to the Chapter 13 Trustee. Section III of Debtor's plan, as amended, provides:

> The debtor submits to the supervision and control of the trustee all or such portion of future earnings or other future income as is necessary for the execution of the plan.  In addition, the debtor will pay to the trustee any

---

[1]      To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and vice versa.

> portion of a recovery under **a pre-petition claim or cause of action that constitutes disposable income or is not exempt.**

(emphasis added). It further provides that (1) Debtor would make payments to the Chapter 13 Trustee in the amount of $855 per month for 26 months, followed by $899 per month for a period of 34 months and (2) "[t]he debtor does not propose to pay 100% of general unsecured claims." In Section V, Property of the Estate, Status and Obligations of the Debtor after Confirmation, the plan provides:

> Upon confirmation of the plan, property of the estate will remain property of the estate, but possession of property of the estate shall remain with the debtor. The chapter 13 trustee shall have no responsibility regarding the use or maintenance of property of the estate. The debtor is responsible for protecting the **non-exempt** value of all property of the estate and for protecting the estate from any liability resulting from operation of a business by the debtor. Nothing herein is intended to waive or affect adversely any rights of the debtor, the trustee, or party with respect to any causes of action owned by the debtor.

(emphasis added). No provision in Debtor's plan creates or maintains a duty to amend schedules or to disclose future assets, including post confirmation causes of action acquired by Debtor during the bankruptcy case.

3.      On July 25, 2013, the Court entered an Order Confirming Debtor's Chapter 13 Plan ("Confirmation Order"). The Confirmation Order provides, in pertinent part, that "[t]he debtor shall not incur indebtedness nor sell, encumber, or otherwise transfer any interest in estate property outside the ordinary course of business without approval of the court." No provision in the Confirmation Order creates or maintains a duty to amend schedules or to disclose future assets, including causes of action, acquired post-confirmation by Debtor during the bankruptcy case.

4.      On July 1, 2016, Debtor's bankruptcy case was reassigned to Pamela Simmons-Beasley as Chapter 13 standing trustee ("Trustee").

3

5.      Debtor regularly made all the payments provided for by the Chapter 13 Plan to the Trustee and distributions were made to his creditors, which resulted in the payment of more than 90% of the claims of his unsecured creditors. Due to Debtor making all the payments provided for by the Plan, Debtor qualified for a discharge under 11 U.S.C. § 1328(a).[2]

6.      According to the allegations of the complaint filed in state court, on June 23, 2017, Debtor was seriously injured in a hit-and-run automobile accident caused by Roy Bolyn while he was driving a truck owned and entrusted to him by Thompson Construction Group, Inc.  As a result of his injuries, Debtor had to have cervical fusion surgery and knee surgery, resulting in significant medical bills of nearly $200,000.  Roy Bolyn pled guilty to reckless driving in exchange for a reduction of the DUI charge and dismissal of the hit-and-run charge.

7.      On June 26, 2017, Debtor retained Joye Law Firm, LLP to represent him in filing a personal injury lawsuit against the State Court Defendants.

8.      On June 26, 2018, Debtor filed a personal injury lawsuit against the State Court Defendants in the Third Judicial Circuit, County of Williamsburg, State of South Carolina, Case No. 2018-CP-45-0288 ("Lawsuit").  The Complaint includes causes of action for Automobile Collision/Negligence, Negligent Entrustment, and Negligent Hiring, Retention, Supervision and Training related to the June 23, 2017 automobile collision.

9.      Debtor did not amend his bankruptcy schedules to report the causes of action in the Lawsuit but, despite his injuries, continued making all payments required by his confirmed Plan to the Trustee.

10.     On July 2, 2018, the Trustee reported to the Court that Debtor had completed his plan payments pursuant to the confirmed Plan in the case and was eligible for a discharge.

---

[2]      Further references to the Bankruptcy Code (11 U.S.C. § 101, *et al.*) shall be by section number only.

11.     On August 15, 2018, Debtor filed his certification of plan completion and request for discharge (a local form in this District) in accordance with 11 U.S.C. § 1328, wherein he certified that all payments due under the plan had been completed.  The certification did not require Debtor to disclose undetermined and unliquidated post confirmation causes of action.

12.     On September 6, 2018, the Court entered an Order granting Debtor a discharge under 11 U.S.C. § 1328(a).

13.     On September 12, 2018, the Trustee filed her Final Report and Account, which states that the case was completed on May 24, 2018, that Debtor paid $55,002.48 to the Trustee and received a refund of $2,206.48.  It also states that the number of months from the filing of the case to last payment was 60 months.  It further states that $7,197.82 was paid to general unsecured creditors out of the total allowed claims of $7,989.87. which represented a 90% payment of claims to these creditors.

14.     The bankruptcy case was routinely closed by Order filed on September 12, 2018.

15.     On October 14, 2019, Debtor made an Offer of Judgment in the amount of $16,000,000 to the State Court Defendants in the Lawsuit pursuant to S.C. Code Ann. § 15-35-400 and SCRCP 68.  The $16,000,000 Offer of Judgment represents the total of the applicable, stacked insurance policies covering the State Court Defendants.

16.     On November 21, 2019, the State Court Defendants' counsel took the deposition of Debtor in connection with the Lawsuit and discovered that Debtor had a pending bankruptcy proceeding at the time of his injury and at the time the Lawsuit was filed.

17.     On February 19, 2020, the State Court Defendants' counsel filed and served a motion for summary judgment in the Lawsuit seeking summary dismissal of Debtor's claims based

on judicial estoppel for Debtor's failure to disclose the personal injury claim as an asset in his bankruptcy case.

18.     On March 2, 2020, Debtor filed a second bankruptcy case, C/A No. 20-01097, with different bankruptcy counsel to address a pending foreclosure action. That case was voluntarily dismissed on April 17, 2020 on Debtor's motion before the filing of schedules or statements.

19.     On March 5, 2020, in response to the motion for summary judgment filed in the State Court, Debtor filed a Motion to Reopen this Chapter 13 Bankruptcy Case for the express purpose of filing an Application to Employ Mark Bringardner of the Joye Law Firm, LLP as his personal injury attorney and to amend his schedules to list the personal injury claim as property of the estate and to claim an exemption in the property. The Certificate of Service filed with the Notice and Motion to Reopen states that the Motion was served on March 6, 2020 on the Trustee, all creditors and parties in interest in the case plus counsel for the State Court Defendants who had asserted the judicial estoppel defense in the summary judgment motion. The declarations and affidavits submitted by Debtor indicate proper service and postage.

20.     The Trustee filed her Notice of Consent to the Motion to Reopen Case on April 24, 2020.

21.     No objections were filed to the reopening of the case as required by the Notice, and the Court accepted the assertions in the Motion to Reopen as sufficient according to SC LBR 9013-4. Therefore, on April 27, 2020, the Court granted Debtor's Motion to Reopen. The Order Granting Motion to Reopen Case authorized Debtor to complete the action proposed in the Motion to Reopen (amend schedules and file the employment application) and found that the appointment of a trustee by the United States Trustee was not necessary at that time to protect the interests of creditors and Debtor or to ensure the efficient administration of the case. The Order Granting

Motion to Reopen Case was served on the same parties using the same addresses used for service of the Motion to Reopen.

22.     On May 4, 2020, Debtor filed Amended Schedules A/B and an Amended Statement of Financial Affairs to disclose the personal injury claim as an asset of his estate with a claimed value of $16,000,000.  He also filed Amended Schedule C to claim an exemption for the personal injury claim pursuant to S.C. Code Ann. § 15-41-30.

23.     On May 5, 2020, Debtor filed an Application to Approve Employment of Attorney *Nunc Pro Tunc*, seeking to employ Mark Bringardner as counsel to represent him in the Lawsuit.

24.     The State Court Defendants filed the Motion to Reconsider on May 11, 2020, asserting a manifest injustice if the Order Reopening Case was not vacated or altered because they alleged that they were not provided with proper notice of the Motion to Reopen.  The State Court Defendants did not challenge the appropriateness of the parties served or addresses listed on the Certificate of Service filed with the Motion to Reopen, only that counsel did not receive the Motion to Reopen. In addition, the State Court Defendants assert the entry of the Order Reopening Case was a clear error of law because Debtor allegedly did not satisfy his burden to reopen the bankruptcy case, that creditors will not benefit from the reopening and that the Defendants will be prejudiced while the Debtor would receive unjustified benefits.

25.     In their Motion to Reconsider and Objections, the State Court Defendants claim to be parties in interest in the case and thereafter refer to themselves as "Interested Parties."  The State Court Defendants are not creditors of Debtor, did not file claims, and were not listed in the schedules as parties with an interest in the distribution of the chapter 13 case, did not receive payments and previously did not file pleadings or otherwise make an appearance in the case.

26.    On May 18, 2020, the State Court Defendants objected to Debtor's Application to Employ.

27.    The State Court Defendants filed an Objection to Exemption on June 3, 2020.

28.    Debtor filed a response to the Motion to Reconsider on June 4, 2020.

29.    On June 11, 2020, Pamela Simmons-Beasley was reappointed as Trustee for the case and the Court conducted a pretrial for the combined hearing on the Motion to Reconsider and Objections (hereafter, the "hearing") to discuss the manner in which evidence would be presented and whether the hearing would be held in person as opposed to video conference due to the COVID-19 public health crisis.[3]

30.    On June 16, 2020, the Court held a hearing on the Motion to Reconsider and Objections, which was attended by Debtor, Debtor's bankruptcy and state court counsel, the State Court Defendants' bankruptcy and state court counsel, and the Trustee.  The Parties stipulated to the admission of certain exhibits, including the Complaint in the Lawsuit, and the declarations or affidavits of several witnesses, including the Trustee and Debtor.[4]  During the hearing, the State Court Defendants made a Motion *in Limine*, seeking to limit the Court's consideration of issues, evidence, and testimony at the hearing. The Court denied the Motion *in Limine*, and thereby admitted the Declaration of Debtor into evidence, for the reasons set forth on the record. The testimony of the Trustee was also received by the Court.  The State Court Defendants cross examined the Trustee but did not call or cross examine any other witnesses during the hearing. Although Debtor was present at the hearing, the State Court Defendants did not seek to question

---

[3]    The parties initially prepared to submit all evidence by stipulated declarations, affidavits or other documents to avoid an in person hearing but it became apparent that some witnesses needed to appear to allow cross-examination or questions.

[4]    The Declaration of Debtor stated the reasons for Debtor not including the Lawsuit in his bankruptcy disclosures.

Debtor regarding his Declaration, which had been previously admitted by the Court, or regarding any other matter.

31.    In the Declaration of Debtor, Debtor made the following statements, under penalty of perjury, which are pertinent to this matter:

    a.    "I did not know, and was never made aware, that my bankruptcy filings were supposed to be amended to reflect my bodily injury claim.  Had I known or been aware that any paperwork needed to be amended, I would have immediately instructed my attorneys and Moss and Associates to submit the appropriate paperwork to this Court to identify my bodily injury claim and appoint the Joye Law Firm, LLP, to represent my (sic) for the bodily injury case."

    b.    "I did not knowingly omit my bodily injury claim from this bankruptcy proceeding and would never do anything to intentionally mislead the Court or misrepresent any fact in a court proceeding."

    c.    "I had no intention or motive to hide my bodily injury claim.  I simply did not know that it was supposed to be included in a supplemental or amended bankruptcy filing."

    d.    "I was not aware of any alleged error or omission with respect to my bankruptcy documents until my attorney was served with [State Court Defendants'] Joint Motion for Summary Judgment in the bodily injury case on February 19, 2020."

    e.    "Immediately upon receipt of the Motion for Summary Judgment and identification of the issues raised related to failure to disclose my bodily injury claim, I instructed Mr. Bringardner to contact Moss and Associates to request

that they move to reopen my bankruptcy case and to do whatever was necessary

to correct any alleged errors or omissions in my filings."

f.    "Nothing I have done or failed to do was a part of an intentional effort to mislead

this Court, the Civil Court in my bodily injury case, or any of my debtors (sic)

or interested parties, or to gain any sort of benefit or advantage.  Any omission

of my bodily injury case was due to my own lack of knowledge and information.

It was nothing more than a good faith mistake that I am now trying to fix."

33.    In addition, Debtor submitted the revised declaration of Mark. J. Bringardner, the
counsel representing him in the personal injury Lawsuit. In his unchallenged declaration, Mr.
Bringardner indicated that he "was not aware of any alleged error or omission with respect to
[Debtor's] bankruptcy documents relating to the bodily injury case until [he and Debtor] were
served with [State Court Defendants'] Joint Motion for Summary in the bodily injury case on
February 19, 2020" and that he and his office "did not knowingly omit [Debtor's] bodily injury
claim from the bankruptcy proceeding and would never have done anything to intentionally
mislead the court or misrepresent any fact in a court proceeding."  Mr. Bringardner indicated that
upon receipt of that joint motion, he immediately contacted Debtor's bankruptcy counsel to amend
his schedules and seek his employment as counsel.

33.    During the hearing, the Trustee was questioned regarding her May 6, 2020 affidavit
that was presented to the state court and her affidavit submitted by Debtor to this Court, which was
admitted into evidence.  During her testimony, the Trustee reaffirmed the following statements
from her affidavit submitted in the state court proceeding:

10

a. "Based on the information provided to me regarding [Debtor's] personal injury claim, it would be subject to this exemption [S.C. Code Ann. § 15-41-30] and thus not available for distribution to his bankruptcy creditors."

b. "The bankruptcy code freely allows debtors to amend their schedules.  Fed. R. Bankr. P. 1009.  However, it is not practical for debtors to amend their schedules to disclose every asset obtained during a three-to-five year chapter 13 bankruptcy case.  Debtors frequently only amend their schedules in connection with specific motions or actions being taken in a bankruptcy case."

c. "Had [Debtor] amended his schedules to include the personal injury claim, my office would not have objected to him asserting the personal injury exemption, both due to [the] generous nature of the South Carolina exemptions, and the fact that [Debtor], despite not being required to by the bankruptcy code, nearly paid his unsecured creditors in full.  As stated earlier, the maximum amount of money that could have been recovered for [Debtor's] creditors, that is, the amount of debt he discharged and his benefit from the bankruptcy proceeding, was $792.05."

d. "I believe inclusion of the personal injury cause of action in his bankruptcy would have had no substantive effect on his bankruptcy case.  The omission of the personal injury claim did not provide a meaningful benefit to [Debtor], nor did the omission prejudice his creditor[s'] rights because the personal injury cause of action would have been protected from creditor collection under South Carolina law."

34.     The Trustee also reaffirmed the following statements from her June 12, 2020 affidavit submitted to this Court:

    a.  "According to the final account and report filed by my office on or around September 12, 2018, [Debtor's] unsecured creditors filed claims totaling $7,989.87 in his case, and my office paid $7,197.82 of those claims.  The remaining balance of the filed claims that was discharged therefore totals approximately $792.05."

    b.  "Had Mr. Boyd amended his schedules to include the personal injury cause of action, my office would not have objected to him asserting the personal injury exemption.  Any recovery for unsecured creditors would have been modest due to [Debtor] paying his unsecured creditors nearly in full, and the costs of litigating any objection to the exemption would have greatly outweighed any recovery."

35.     The Trustee further testified that she does not oppose Debtor's claim for an exemption for the personal injury action after the reopening of his case and she stated that if the exemption is not allowed, she would not pursue litigation of the Lawsuit.  She also indicated that she would not administer the asset any further and that it would be abandoned from the estate upon the reclosing of the case.

*Positions of the Parties*

In the Motion to Reconsider, the State Court Defendants first assert that they will suffer a manifest injustice if the Order Reopening Case is not reconsidered because they allege that they would have objected to Debtor's Motion to Reopen but for their alleged failure to receive service of the motion. Second, the State Court Defendants assert that the Court made a clear error of law

in granting the Order Reopening Case, relying predominately upon a non-binding opinion of another Bankruptcy Judge in this District, *In re Ingram*, 531 B.R. 121 (Bankr. D.S.C. 2015), specifically, its statement and analysis of factors to be considered in reopening a case. Specifically, the State Court Defendants assert that they will suffer prejudice while Debtor receives an unjustified benefit if the Order Reopening Case remains binding. This prejudice appears to be entirely based upon the potential conclusive effect the reopening of the case and amendment of schedules may have on the State Court Defendants' judicial estoppel defense asserted in the Lawsuit. The State Court Defendants also assert as a dispositive factor that Debtor will not be making any further disbursements to his creditors as a result of the reopening of the case, and therefore, his creditors will not benefit. Finally, inherent in the Motion to Reconsider is the Defendants' assertion that Debtor's omission of the Lawsuit in his bankruptcy schedules was presumptively a bad faith, intentional act designed to mislead the Court to his unfair advantage.[5]

As to their Objection to Exemption, the State Court Defendants assert that, despite the fact that the Lawsuit has not been liquidated, not all of the damages alleged by Debtor in the Lawsuit are exempt under the South Carolina Code section upon which Debtor relies. In regards to the Application to Employ, the State Court Defendants assert that Debtor has not satisfied the burden of proof to permit *nunc pro tunc* approval of employment by the Court of his personal injury trial counsel in the Lawsuit.

Conversely, Debtor asserts that any omission of the Lawsuit was inadvertent and based upon a good faith belief that disclosure was not required. Debtor further asserts that the reopening

---

[5]    For example, the State Court Defendants' Motion to Reconsider alleges that Debtor's efforts are not "to correct a mistake" but that he is only reopening the case "after being caught concealing the asset" and is "now trying to further puppeteer the judicial system's strings by reopening and disclosing only now that it is beneficial to Debtor." In the joint statement of dispute, the State Court Defendants allege that "Debtor is inviting this Court to adopt a holding which espouses and encourages a debtor's lack of diligence, lack of candor, concealment of assets, [and] noncompliance with the rules . . . ."

serves several purposes, including the scheduling of the Lawsuit to allow his continued

prosecution, the claiming of an exemption provided to Debtor as an injured party by state law, and

the seeking of approval of his amendments and his hiring of counsel in the Lawsuit by the Trustee

and the Court.

## CONCLUSIONS OF LAW

### Standing of State Court Defendants

The standing of the parties is a threshold matter in all court proceedings and may be raised

by the Court *sua sponte*. *See, e.g., Benham v. City of Charlotte, N.C.*, 635 F.3d 129, 134 (4th Cir.

2011) ("When a question of standing is apparent, but was not raised or addressed in the lower

court, it is our responsibility to raise and decide the issue *sua sponte*."); *Allstate Ins. Co. v. Adkins*,

932 F.2d 963 (table), 1991 WL 77673, at *3 (4th Cir. 1991) (upholding a district court's raising

issues of standing *sua sponte* as standing may not be waived by the parties). The burden to establish

standing is on the party seeking to be heard by the court. *See Summers v. Earth Island Inst.*, 555

U.S. 488, 4983 (2009).

A critical element to establish standing to move for or object to relief in a bankruptcy

proceeding is whether the party is a party in interest.[6] The Bankruptcy Code does not define the

term "party in interest" for purposes of chapter 13 cases. Under 11 U.S.C. § 1109, which sets forth

who has a right to be heard and raise issues in chapter 11 cases, the Code states that a "party in

interest" includes, but is not limited to "the debtor, the trustee, a creditors' committee, an equity

---

[6]      For example, a portion of the relief sought by State Court Defendants in the present matter must be made by
a "party in interest." *See, e.g.,* Fed R. Bankr. P. 4003(b)(1) ("a **party in interest** may file an objection to the list of
property claimed as exempt" (emphasis added)"); *In re D'Antignac*, C/A No. 05-10620, slip op. 2013 WL 1084214
(Bankr. S.D. Ga. Feb. 19, 2013) (noting that courts considering the issue of whether a party has standing to oppose a
motion to reopen "focus on whether the objecting party is a 'party in interest.'"); *In re Fullenkamp*, 477 B.R. 826, 830
(Bankr. M.D. Fla. 2011) ("Only the U.S. Trustee, creditors and other parties-in-interest have standing to object to a
professional employment application under Section 327.").

security holders' committee, a creditor, an equity security holder, or any indenture trustee . . . ." The Fourth Circuit has indicated a party in interest for bankruptcy purposes includes "'all persons whose pecuniary interest are directly affected by the bankruptcy proceedings.'" *In re Hutchinson*, 5 F.3d 750, 756 (4th Cir. 1993) (quoting *White County Bank v. Leavell (In re Leavell)*, 141 B.R. 393, 399 (Bankr. S.D. Ill. 1992)); *see also Willemain v. Kivitz*, 764 F.2d 1019 (4th Cir. 1985) (holding that a chapter 7 debtor lacked standing in an insolvent estate to challenge the sale of an estate asset because the debtor lacked a pecuniary interest in the litigation). As bankruptcy courts in the Fourth Circuit have noted, the pecuniary interest must be "directly affected" by the bankruptcy proceeding, and therefore, "a remote pecuniary interest will not suffice for standing." *In re Alpha Natural Resources Inc.*, 544 B.R. 848, 856 (Bankr. E.D. Va. 2016) (finding a party objecting to an application for compromise and settlement had too remote of a pecuniary interest in the matter before the bankruptcy proceeding). Likewise, the Fourth Circuit, in determining whether a party is a "person aggrieved" for standing to appeal a bankruptcy order, has relied upon whether "'a party [is] directly and adversely affected pecuniarily.'" *White v. Univision of Va. Inc. (In re Urban Broadcasting Corp.)*, 401 F.3d 236, 244 (4th Cir. 2005) (quoting *U.S. Trustee v. Clark (In re Clark)*, 927 F.2d 793, 795 (4th Cir. 1991)).

In addition to being a party in interest, a party seeking or opposing relief in a bankruptcy matter must also establish constitutional standing under Article III of the Constitution. To establish constitutional standing, the party must first "have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[.]" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations omitted). Second, the party must establish that the injury in fact is traceable to the conduct at issue. *Id.* Finally the party must show that it is "'likely,' as opposed to merely 'speculative,' that

the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976)).

While it is clear that Debtor has standing to file a motion to reopen, to file an application to employ and to amend schedules to disclose the Lawsuit and assert an exemption, there is a question whether the State Court Defendants have standing to move to reconsider the reopening of Debtor's case, to object to Debtor's claim of an exemption and to object to Debtor's Application to Employ. The Court will consider the State Court Defendants' standing as to each matter individually.

**Debtor Had No Duty to Amend his Schedules or to Disclose the Lawsuit**

As a threshold matter, the State Court Defendants' standing to be heard and arguments on the Motion to Reconsider and Objections appear dependent on Debtor's failure to disclose the Lawsuit as a bankruptcy asset by amending his schedules. The State Court Defendants allege that Debtor's failure to schedule the Lawsuit was intended to mislead the Court that he did not have a cause of action in order to gain an unfair benefit, and that this Court relied on that failure to disclose. Therefore, Debtor should be barred from taking an inconsistent position by prosecuting the cause of action in state court because it would be an affront to the integrity of the judicial system.

However, after careful examination, it does not appear that the Code, bankruptcy rules, confirmed Plan or any order of this Court placed an ongoing duty on Debtor in this case to amend schedules or otherwise disclose the Lawsuit.  Without such a duty or knowledge that one existed, Debtor cannot be found to have acted intentionally to mislead this Court.

Without dispute, § 541(a) provides that the commencement of a case creates a bankruptcy estate, which includes all of the debtor's legal and equitable interest in property at the filing of the

petition, including contingent and unliquidated claims existing at that time. In addition, § 541 also provides that certain types of property obtained post-petition are part of the estate. Section 541(a)(5) provides that property acquired by the debtor within 180 days after the commencement of the case that is received due to a gift, inheritance, domestic property settlement or life insurance/death benefits is part of the estate. Section 541(a)(6) provides that any proceeds, product, offspring, rents or profits of or from property of the estate also becomes part of the estate. Further, § 541(a)(7) provides that the estate includes "any interest in property that the estate acquires after the commencement of the case[.]" While the wording of this section appears broadly expansive, it has been widely viewed as applying only to post-petition property *acquired by the estate* (that is property created with or by property of the estate) and not to property *acquired by an individual debtor* personally, such as the debtor's earnings or property debtor acquires after the petition date. *See American Bankers Ins. Co. of Fla. v. Maness*, 101 F.3d 358, 362–63 (4th Cir. 1996) ("Generally property not owned at the time of the petition but only subsequently acquired by the debtor does not become property of the bankruptcy estate . . . [with] limited exceptions to this rule."); *MacKenzie v. Neidorf (In re Neidorf)*, 534 B.R. 369, 371 (9th Cir. B.A.P. 2015) ("Section 541(a)(7) makes property of the estate any interest in property that the estate (not the debtor) acquires after the petition date."). "Congress enacted § 541(a)(7) . . . to ensure that property interest created with or by property of the estate are themselves property of the estate." *TMT Procurement Corp. v. Vantage Drilling Co. (In re TMT Procurement Corp.)*, 764 F.3d 512, 524-25 (5th Cir. 2014). The "obvious implication [of § 541(a)(6) and (7) is that] property acquired postpetition **by an individual debtor** is usually not property of the estate." 5 Collier on Bankruptcy ¶ 541.02 (LEXIS 2020) (emphasis added). "When an individual debtor receives property postpetition, the determination of whether the property is property of the estate turns on whether the postpetition

17

property is 'sufficiently rooted in the prebankruptcy past.'" *In re Vanwart*, 497 B.R. 207, 212 (Bankr. E.D.N.C. 2013) (quoting *Segal v. Rochelle*, 382 U.S. 375, 380 (1966)) (holding that a chapter 7 debtor's cause of action that arose post-petition was not sufficiently rooted in the debtor's prebankruptcy past and therefore was not property of the estate pursuant to § 541); *see also In re De Hertogh*, 412 B.R. 24 (Bankr. D. Conn. 2009) (finding that a post-petition cause of action for malpractice against the debtor's bankruptcy attorney for actions that resulted in the disallowance of debtor's homestead exemption was not part of the estate under § 541(a)(7) because the debtor, and not the estate, suffered the harm that gave rise to the post-petition cause of action). Therefore, it appears that post confirmation causes of action such as the Lawsuit in this case that are attributable solely to post-petition events are not property of the estate under any section of § 541(a).[7]

In a chapter 13 case, it is clear that § 1306(a) expands property of the estate to include post-petition property and earnings acquired by the debtor personally. *See also Carroll v. Logan*, 735 F.3d 147 (4th Cir. 2013) (discussing the expansive scope of § 1306(a)). Therefore, in chapter 13 cases, a debtor's cause of action that arises post-petition may become property of the estate; whereas, those causes of action would generally not be part of the estate in a chapter 7 case. Based on § 1306, the Lawsuit in this case is property of the chapter 13 estate.

---

[7]        The Fourth Circuit has found the following assets were brought into the estate post-petition under § 541(a)(7): property subject to right of survivorship at the time of petition which thereafter vests into fee simple title upon a post-petition event (*see In re Ballard*, 65 F.3d 367, 372 (4th Cir. 1995); *In re Cordova*, 73 F.3d 38 (4th Cir. 1996)); post-petition recovered costs and expenses from a secured creditor pursuant to § 506(c) by the chapter 7 trustee (*In re JKJ Chevrolet, Inc.*, 26 F.3d 481, 484 (4th Cir. 1994)); a legal malpractice claim against the chapter 7 debtor's counsel for continuing advice and handling of the debtor's case both prior to and after the filing of the petition (*In re Richman*, 117 F.3d 1414 (Table), 1997 WL 360644 (4th Cir. July 1, 1997) (unpublished)); and prepetition causes of action held by a mortgage creditors against the debtor that are unconditionally assigned to the chapter 7 trustee post-petition (*In re Bogan*, 414 F.3d 507 (4th Cir. 2005)). Conversely, the Fourth Circuit has found that proceeds from the debtor's post-petition insurance policy which resulted from a fire of an estate asset were not property of the estate because the insurance policy was not acquired by the estate after the commencement of the case but by the debtor who did not expressly make the estate a loss payee on the policy. *See Maness*, 101 F.3d at 366.

The duty and the method required for the reporting and accounting of property of the estate in bankruptcy cases is addressed by § 521. Section 521(a) provides in part that the debtor has a duty to file among other items:

(A) a list of creditors; and
(B) unless the court orders otherwise—
  (i) a schedule of assets and liabilities;
  (ii) a schedule of current income and current expenditures;
  (iii) a statement of the debtor's financial affairs and, if section 342(b) applies, a certificate—
    (I) of an attorney whose name is indicated on the petition as the attorney for the debtor, or a bankruptcy petition preparer signing the petition under section 110(b)(1), indicating that such attorney or the bankruptcy petition preparer delivered to the debtor the notice required by section 342(b); or
    (II) if no attorney is so indicated, and no bankruptcy petition preparer signed the petition, of the debtor that such notice was received and read by the debtor;
  (iv) copies of all payment advices or other evidence of payment received within 60 days before the date of the filing of the petition, by the debtor from any employer of the debtor;
  (v) a statement of the amount of monthly net income, itemized to show how the amount is calculated; and
  (vi)  a statement disclosing any reasonably anticipated increase in income or expenditures over the 12-month period following the date of the filing of the petition[.]

However, the Code, as stated in § 521, does not provide the timing of when those disclosure documents must be filed. Rather, Congress approved the Federal Rules of Bankruptcy Procedure to provide this guidance. Fed. R. Bankr. P. 1007(b) parallels § 521(a)(1)(B) in identifying certain documents to be filed, including schedules of assets and liabilities and current income and expenditures. Bankruptcy Rule 1007(c) establishes the time limits for such filings and provides that in a voluntary chapter 13 case, the schedules of assets and liabilities, a schedule of current income and expenditures, a schedule of executory contracts and unexpired leases, a statement of financial affairs, and certain other documents listed in Bankruptcy Rule 1007(b) and § 521(a) shall be filed within 14 days after the commencement of the case. Fed. R. Bankr. P. 1007(h) specifically

addresses interests acquired or arising after the petition, but **only** provides for the filing of supplemental schedules for property or property interests acquired by the debtor as provided by § 541(a)(5) of the Code, including those acquired in a chapter 13 case. Further, a review of Fed. R. Bankr. P. 4002, which addresses a debtor's duties during a case, indicates no duty for a debtor to schedule assets acquired post-confirmation. Noticeably, neither Rule 1007(h) or any other bankruptcy rule indicates that a chapter 13 debtor must file a supplemental or amended schedule for other types of property acquired post-petition that become part of the estate as a result of § 1306(a).[8]

There is no doubt that a debtor who has a duty to disclose under § 521(a) at the beginning of the case (or within the time requirements specified in that section or pursuant to Fed. R. Bankr. P. 1007) but does not do so, continues to have that duty. Likewise, if a court enters an order requiring disclosure, such as requiring updated schedules upon conversion of the case, it is an obligation which continues until it is performed. However, there appears to be no other ongoing duty to disclose or amend schedules.[9]

---

[8]    The Court also notes that Fed. R. Bankr. P. 1007(h) does not include the property that comes within the estate under § 541(a)(6) or (7).

[9]    While it might be tempting to read § 521 and Fed. R. Bankr. P. 1007 as providing that the duty to file lists provided by § 521(a) may apply to all post-petition acquired assets and income, such a conclusion is contradicted by the language of the statute and rule. For instance, § 521(f)(4) provides that in chapter 13 cases, **if requested by** the Court, the United States trustee or any part in interest, an individual debtor must file:

> (A)  on the date that is either 90 days after the end of such tax year or 1 year after the date of the commencement of the case, whichever is later, if a plan is not confirmed before such later date; and

> (B)  annually after the plan is confirmed and until the case is closed, not later than the date that is 45 days before the anniversary of the confirmation of the plan

> a statement, under penalty of perjury, of the income and expenditures of the debtor during the tax year of the debtor most recently concluded before such statement is filed under this paragraph, and of the monthly income of the debtor, that shows how income, expenditures, and monthly income are calculated.

Such a provision would be superfluous and unnecessary if there was such an ongoing duty to report all after-acquired income and expenditures under § 521(a)(1)(B)(ii).

The failure of the Bankruptcy Code and Rules to require disclosure of property acquired post-petition, and certainly post-confirmation, by amended schedules in a chapter 13 case is understandable when one considers the effect of § 1327. Under § 1327(b), absent a plan provision or confirmation order stating otherwise, the expected statutory disposition of all estate property is for it to be "vested" in the chapter 13 debtor. *See also In re Cherry*, 2020 WL 3638398 (7th Cir. July 6, 2020) (noting that vesting upon confirmation is the statutory presumption and norm under § 1327(b)). While "vesting" is not defined in the Code, the plain meaning of the term suggests a transfer of ownership or title as indicated by Black's Law Dictionary, which defines "vest" as:

> 1. To confer ownership (of property) upon a person. 2. To invest (a person) with full title to property. 3. To give (a person) an immediate, fixed right of present or future enjoyment.

Further, the Code suggests that "vesting" includes more than just granting a right of possession of property. Compare 11 U.S.C. § 1306(b) ("Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.") with 11 U.S.C. § 1327(b) ("Except as provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.").

Section 1327(c) also provides that absent a provision in a plan or in the confirmation order providing otherwise, upon vesting, the property "is free and clear of any claim or interest of any creditor provided for by the plan."

A leading treatise describes § 1327(b) as "implement[ing] a major theme of chapter 13 by preserving to the debtor ownership, as well as possession of all property, whether acquired before or during the chapter 13 case, except as otherwise required to effectuate the confirmed plan." 8 Collier on Bankruptcy ¶ 1327.03 (LEXIS 2020). At the time of this Order, neither the Fourth Circuit nor the United States Supreme Court have otherwise addressed the definition or meaning

of "vesting" in § 1327(b). *See In re Murphy*, 474 F.3d 143, 154 (4th Cir. 2007) (declining to address the interplay of § 1306(a) and § 1327(b) or select a preferable interpretation of these Code sections).

Vesting logically supports the premise that debtors and creditors alike rely on the amount of payments specifically provided for in the confirmed plan. Under such a statutory analysis, it makes sense that Congress would not specify a further duty to disclose post-confirmation assets by the continuous filing of amended schedules. Since property of the estate includes every type of property and earnings a debtor acquires post-petition, it would be problematic to specify what level of assets would require reporting and when. Would every new refrigerator, every traded car, every dollar change in income, every new expense be required to be disclosed? When would such disclosure be required? Such an approach would not only be impractical but would virtually inundate the court with filings and impair the efficiency of the chapter 13 process. These sentiments were echoed by the Chapter 13 Trustee in this case who testified that "it is not practical for debtor to amend their schedules to disclose every asset obtained during a three-to-five year chapter 13 bankruptcy case."

The Bankruptcy Code therefore provides significant discretion to each bankruptcy court to establish the rights and duties regarding post-confirmation assets. If there is to be a duty to disclose or amend schedules beyond that provided in the Bankruptcy Code or Rules, it is within the province of each local court to establish such a duty.

*South Carolina Procedures*

This District has opted out of the § 1327(b) and (c) vesting provisions. Instead, it not only places post-confirmation property of the estate in the possession, use, and responsibility of the

debtor, but notably relieves the trustee of responsibility for its use and maintenance under section V of the District's former form chapter 13 plan used in this case at that time:

> Upon confirmation of the plan, property of the estate will remain property of the estate, but possession of the property of the estate shall remain with the debtor. The chapter 13 Trustee shall have no responsibility regarding the use or maintenance of property of the estate. The debtor is responsible for protecting the **non-exempt** value of all property of the estate and for protecting the estate from any liability resulting from the operation of a business by the debtor. Nothing herein is intended to waive or affect adversely any rights of the debtor, the trustee, or party with respect to any causes of action owned by the debtor. (*emphasis added*)

The Plan dictates that Debtor protect only the **non-exempt** value of estate property. The Plan provides no obligation to disclose or schedule property acquired post-confirmation.

Similarly, while it restricts a debtor's right to sell, encumber or transfer property of the estate without court approval, the plain language of the Confirmation Order used in this case does not create an obligation to amend schedules or otherwise disclose property acquired post-confirmation. Further, no local rule requires post-confirmation disclosure or otherwise creates an obligation to amend schedules to report any causes of action that arise post-confirmation.[10]

A review of the form chapter 13 plans used in neighboring bankruptcy courts in the Fourth Circuit provides support for the conclusion that it is up to the presiding bankruptcy court to identify and place any post-confirmation disclosure and scheduling duties on a debtor if they are to exist.

The form plan for the Bankruptcy Court for the Western District of North Carolina provides:

> 7.1 Property of the estate includes all of the property specified in 11 U.S.C. § 541 and all property of the kind specified in 11 U.S.C. § 1306 acquired by the Debtor after commencement of the case but before the case is closed, dismissed, or

---

[10]    The Chapter 13 Trustee in this case confirmed that it is customary in this District for a chapter 13 debtor to only amend schedules or exempt a post-petition injury cause of action when it is settled, liquidated and becomes income, if not otherwise exempt. The Chapter 13 Trustee indicated that her knowledge was based upon her time as a chapter 13 trustee in this District as well as her 20-plus years practicing in chapter 13 cases as a bankruptcy attorney in South Carolina.

converted to one under another chapter of the Code. All property remains vested in the estate and will vest in the Debtor upon entry of the final decree.

. . .

8.1.7 **The Debtor shall notify the Chapter 13 Trustee of any substantial acquisitions of property or significant changes in net monthly income that may occur during the pendency of the case and shall amend the appropriate schedules previously filed in the case accordingly.**

(emphasis added). Similarly, the Bankruptcy Court for the Middle District of North Carolina's form chapter 13 plan provides that:

8.1 f. Notwithstanding 11 U.S.C. § 1327(b), all property of the estate as specified by 11 U.S.C. §§ 541 and 1306 shall continue to be property of the estate following confirmation until the earlier of discharge, dismissal, or conversion of the case.

…

h. **The Debtor must promptly report to the Trustee and must amend the petition schedules to reflect any significant increases in income and substantial acquisitions of property such as inheritance, gift of real or personal property, or lottery winnings.**

(emphasis added). Likewise, the Bankruptcy Court for the Northern District of West Virginia provides procedures for disclosing certain substantial post-confirmation assets through the order confirming chapter 13 plan:

10. Notwithstanding any provision of the Plan to the contrary, all property of the estate, as specified by 11 U.S.C. §§ 541 and 1306, shall continue to be property of the estate following confirmation.

. . .

19. **The Debtor shall promptly report to the Trustee the receipt of any inheritance, gift of real or personal property, or lottery winnings**.

*In re Likens*, C/A No. 20-00019, slip op. at 8–0 (Bankr. N.D. W. Va. May 26, 2020) (emphasis added). As these examples demonstrate, the confirmed plan or confirmation order can place a clear and express obligation on the debtor for post-confirmation disclosures of assets and set forth parameters for what assets must be disclosed.

Other bankruptcy courts have similarly recognized that the Code and rules do not create an affirmative duty to amend schedules for property arising after confirmation that becomes part of

the estate under § 1306(a). *See In re Denges*, C/A No. 14-33042-ABA, slip op. 2020 Bankr. LEXIS
1155 at *9 (Bankr. D.N.J. Apr. 21, 2020) ("While debtors have a duty of disclosure at the
commencement of a case, there is no statutory or procedural rule directing disclosure of assets
obtained postpetition except certain property acquired 180 days after filing by operation of section
541(a)(5), i.e. an inheritance, a property settlement agreement or a life insurance benefit."); *In re
Grice*, 319 B.R. 141, 144 (Bankr. E.D. Mich. 2004) ("Although [§ 521] does not on its face impose
a duty to continue to update information from time to time post-confirmation as the Debtor's
circumstances may change, the Trustee urges the Court to read such a requirement into § 521. . . .
However, § 521 of the Bankruptcy Code does not impose this requirement nor did the Debtor's
plan.").

Leading bankruptcy treatises have also noted the lack of a requirement to amend schedules
for property that becomes party of the estate as a result of § 1306(a). For example, *Collier on
Bankruptcy* provides:

> It is also important to note that while Rule 1007(h) requires scheduling of property
> acquired postpetition that becomes property of the estate pursuant to section
> 541(a)(5), **it does not require scheduling of property acquired postpetition that
> becomes property of the estate only due to the operation of section 1207(a) or
> section 1306(a). Because all property acquired postpetition can become
> property of the estate, at least until confirmation of the plan, to require
> scheduling of such property would be completely impracticable.** The debtor's
> cash on hand could, literally, change every day, as items are purchased and new
> paychecks are received. The primary purpose of sections 1207 and 1306 is to give
> the protection of section 362(a) to property acquired postpetition in order to ensure
> the debtor's ability to perform under a plan.

9 Collier on Bankruptcy ¶ 1007.08 (LEXIS 2020) (emphasis added). Similarly, *Lundin on Chapter
13* provides that:

> It is difficult for creditors to know when a debtor experiences a significant increase
> in income or assets that would justify a motion to modify to increase payments. **No
> provision of the Code or Rules requires a Chapter 13 debtor to report the
> receipt of postpetition assets or increases in income, except the narrow class of**

25

**inheritances within 180 days of the petition described in § 541(a)(5).** Some
courts include in the standard order of confirmation that the debtor must report
changes in income on some regular basis. Even so, the report will typically be filed
with the court or the trustee, and creditors must make a special effort to become
informed.

Keith M. Lundin, LUNDIN ON CHAPTER 13, § 127.9, at ¶ 23, LundinOnChapter13.com (last visited

July 2, 2020) (emphasis added). As these treatises highlight, a debtor's income and assets are

constantly changing over the three to five years that a chapter 13 case is pending. An expectation

that a debtor amend schedules for every change in income and assets would be impractical and

overly burdensome on the debtor.

The Court also notes that under section V of the confirmed Plan, Debtor has the authority

to use property of the estate and, therefore, possesses the right to prosecute any causes of action

that accrued post-confirmation. The Fourth Circuit in *Wilson v. Dollar General, Corp.*, 717 F.3d

337, 343 (4th Cir. 2013) recognized that, under Fed. R. Bankr. P. 6009, a chapter 13 debtor may

commence and prosecute a post-petition cause of action before any tribunal in behalf of the estate

in the debtor's own name, **exclusive of the chapter 13 trustee and without the approval of the**

**bankruptcy court**.[11] Like the debtors in  *Wilson* and *Martineau v. Wier*, 934 F.3d 385 (4th Cir.

2019) who suffered direct injuries, Debtor was the real party in interest who suffered the actual

injury, in this case significant bodily injuries, which establishes standing to sue as permitted by

Fed. R. Civ. P. 17(a)(1)(G) and under §§ 363, 1303, and 1306.

It is therefore reasonable to conclude that, unless otherwise ordered by this Court, Debtor

could file the Lawsuit and prosecute it without amending his schedules at that time, especially with

---

[11]        In *Wilson*,  the Fourth Circuit compared chapter 13 debtors to a chapter 11 debtor-in-possession, noting that,
like chapter 11 debtors-in-possession, chapter 13 debtors remain in possession of all assets of the estate under
§ 1306(b) and noting the grant of certain trustee administrative powers related to the use and sale of estate assets under
§ 363 to a chapter 13 debtor under § 1303. *Wilson*, 717 F.3d at 343-44.

the expectation that any recovery would be exempt under South Carolina law. At the very least, it is understandable that Debtor was not aware of any responsibility to disclose the Lawsuit to the Court, Trustee or his bankruptcy attorney. The fact that the Lawsuit was not settled, tried, or otherwise liquidated to produce income or benefit to Debtor during the term of the chapter 13 plan provides further justification for Debtor's lack of knowledge and failure to amend.

Nonetheless, some courts have held, often in a simple sentence, that a bankruptcy debtor always has a "continuing duty to disclose." This holding is absolutely true in instances where the property or cause of action arose prepetition or under the specific provisions of § 541 and Fed. R. Bankr. P. 1007 which cover after acquired property. It would also be true in instances where a court placed that duty on a debtor by order, including an order to update schedules in an order converting the case to another chapter in the Bankruptcy Code. *See Robertson v. Flowers Baking Co. of Lynchburg, LLC*, 2012 WL 830097, at *2 (W.D. Va. Mar. 6, 2012) *aff'd* 474 F. App'x 242 (4th Cir. 2012) (debtor failed to update schedules to disclose post-petition cause of action when order converting case to chapter 7 expressly required it); *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1284 (11th Cir. 2002) (same). However, these circumstances are not applicable to the instant case.

According to this Court's research, the most frequently cited case, which references this continuing duty to disclose in a bankruptcy case, is *In re Coastal Plains*, 179 F.3d 197 (5th Cir. 1999). [12]    *Coastal* was a chapter 11 case that involved complicated and unique facts covering a

---

[12]        *Coastal* is also widely cited for establishing a so called "bankruptcy-specific presumption" regarding the omission of a cause of action in bankruptcy schedules in applying judicial estoppel. Under the presumption, "a debtor's failure to satisfy her statutory duty [to disclose] is inadvertent only when, in general, the debtor lacks knowledge of the undisclosed claims or has no motive for their concealment." *Coastal*, 179 F.3d at 210. A motive for concealment, in turn, may be "inferred" because nondisclosure benefits a debtor by denying creditors potential assets. *Id.* at 210–12.

In the case before this Court, the State Court Defendants appear to be using this presumption of bad faith or intentional conduct to characterize Debtor's action for purposes of asserting the judicial estoppel defense.

ten- year time period, in which the cause of action at issue arose prepetition and was not listed in

the initial schedules and statements nor mentioned before confirmation in the chapter 11 disclosure

statement. *Id.* at 203. In *Coastal*, the court emphasized that creditors relied upon such full

disclosures in deciding what action to take in the case. *Id.* at 208. In the case before this Court, the

cause of action arose well after confirmation and therefore could not have affected creditor

decisions regarding confirmation of the Plan. As to any effect that the failure to amend the

schedules upon the filing of the Lawsuit had upon this case, the testimony of the Chapter 13 Trustee

is convincing. Specifically, the Chapter 13 Trustee reaffirmed her prior belief that:

> [I]nclusion of the personal injury cause of action in his bankruptcy would have had
> no substantive effect on his bankruptcy case.  The omission of the personal injury
> claim did not provide a meaningful benefit to [Debtor], nor did the omission
> prejudice his creditor[s'] rights because the personal injury cause of action would
> have been protected from creditor collection under South Carolina law.

There is no dispute that there is a statutory duty to disclose prepetition assets, including

causes of action that are contingent or unliquidated, at the commencement of every bankruptcy

case and that the duty, if not performed, continues even after the filing of the initial schedules and

statements.   Therefore, decisions finding a continuing duty to disclose in those instances are

correct, including the Fourth Circuit's decision in *Martineau*. In *Martineau,* which cited *Coastal*

*Plains*, the Fourth Circuit held that a chapter 7 debtor had a continuing duty to disclose when the

debtor failed to list a cause of action that accrued prepetition, a disclosure that is mandated under

§ 521(a) and Fed. R. Bankr. P. 1007. *Martineau*, 934 F.3d at 396. Several cases within this District

have also cited this continuing duty in regards to unscheduled prepetition causes of action.[13]

---

[13]    The following decisions of the U.S. District Court for the District of South Carolina denied the debtor's
standing to sue on a prepetition cause of action because the claim was property of the chapter 7 bankruptcy estate, and
therefore, the chapter 7 trustee was the appropriate party to sue if there was no evidence of exemption or abandonment
by the estate.  *See, e.g., Ketema v. Midwest Stamping, Inc.*, 2007 WL 9747241 (D.S.C. Mar. 6, 2007); *Sain v. HSBC
Mort. Servs., Inc.*, 2009 WL 28589993 (D.S.C. Aug. 28, 2009); *Evans v. Allied Air Enters., Inc.*, 2011 WL 4548307
(D.S.C. Sept. 30, 2011) reconsidered by 2012 WL 2572266 (D.S.C. July 2, 2012); *Brockington v. Jones*, 2007 WL

However, there are also decisions which miscite *Coastal* or its progeny for the proposition that a continuing duty to disclose exists throughout the duration of the bankruptcy case,[14] others which utilize *Coastal*'s presumption of bad faith and intentional conduct, which has since been rejected by *Martineau*, and others which rejected a chapter 13 debtor's standing to sue on a post-petition cause of action, which is now recognized in *Wilson*.[15]

---

4812205 (D.S.C. Nov. 28, 2007); *O'Neal v. Quicken Loans, Inc.*, 2016 WL 3569402 (D.S.C. June 20, 2016); *Pappacoda v. Palmetto Health*, 2014 WL 4417559 (Sept. 8, 2014).

[14]    For example, the court in *Robertson* indicated that a debtor's duty to disclose "continues through the pendency of the bankruptcy proceeding and requires the [debtor] to amend his financial statements if his situation changes, citing to *Casto v. American Union Boiler Co. of West Virginia*, 2006 WL 660458 (S.D. W.Va. Mar. 14, 2006) as support. *See Robertson*, 2012 WL 830097 at *5. The *Casto* court, citing to *Coastal Plains*, made a nearly identical statement that the "duty to disclose continues through the pendency of the bankruptcy proceeding and requires a debtor to amend his financial statement if his or her situation changes." However, reviewing *Coastal Plains*, the Fifth Circuit's decision does **not** indicate that the duty of disclosure extends to amending financial statements if the debtor's situation later changes after the confirmation of a plan. At most, *Coastal Plains* only discusses disclosure prior to confirmation. *See Coastal Plains*, 179 F.3d at 208 ("'[I]f the debtor has enough information . . . prior to confirmation to suggest that it may have a possible cause of action, then that is a known cause of action such that it must be disclosed.'" (quoting *Youngblood Group v. Lufkin Fed. Sav. & Loan Ass'n*, 932 F.Supp. 859, 867 (E.D. Tex. 1996))).

[15]    The following cases rejected a chapter 13 debtor's standing to sue on grounds now rejected by the Fourth Circuit Court in *Wilson*. *See Wright v. Guess*, 2010 WL 348377 (D.S.C. Jan. 25, 2010); *Thomas v. Palmetto Management Servs.*, 2006 WL 2623917 (D.S.C. Sept. 11, 2006).

Some cases in this District also found the debtor was barred by judicial estoppel from asserting undisclosed claims by relying on an inference or presumption of bad faith (failure to disclose a known asset prohibits a finding of inadvertence or mistake), a position now soundly rejected by *Martineau* in favor of an examination of the facts in each case. *See Wright v. Guess*, 2010 WL 348377 (D.S.C. Jan. 25, 2010); *Evans v. Allied Air Enters., Inc.*, 2011 WL 4548307 (D.S.C. Sept. 30, 2011); *Pappacoda v. Palmetto Health*, 2014 WL 4417559 (Sept. 8, 2014); *Thomas v. Palmetto Management Servs.*, 2006 WL 2623917 (D.S.C. Sept. 11, 2006). Other courts examined the facts to determine whether a sufficient misrepresentation has occurred to apply judicial estoppel. See *O'Neal v. Quicken Loans, Inc.*, 2016 WL 3569402 (D.S.C. June 20, 2016) (finding the alleged misrepresentation was insufficient to apply judicial estoppel); *Glenn v. Bank of America*, 2010 WL 3786171 (D.S.C. Sept. 22, 2010) (finding the question of whether a misrepresentation occurred as a result of an unscheduled claim in a bankruptcy case was an issue of fact that precluded dismissal at the Rule 12(b)(6) stage); *Smith v. Bishop Gadsden Episcopal Retirement Community*, 2017 WL 4923733 (D.S.C. Oct. 31, 2017) (finding the chapter 13 debtor's general listing of a "wrongful termination" and "worker's compensation" in her bankruptcy schedules was a sufficient disclosure to defeat judicial estoppel).

Likewise, these issues of standing and judicial estoppel often arise in litigation in state court as part of a foreclosure action in which the debtor asserts counterclaims or defenses which existed prepetition as indicated in certain unpublished and non-precedential decisions of the Court of Appeals of South Carolina. *See Midfirst Bank v. Brooks*, 2008 WL 9841165 (S.C. Ct. App. Mar. 20 2008) (finding a chapter 13 debtor lacked standing to assert prepetition defenses and counterclaim as the trustee had exclusive standing to bring these matters, a holding that would not now apply after the Fourth Circuit's decision in *Wilson*); Green Tree Servicing, LLC v. Taylor, 2018 WL 6119594 (S.C. Ct. App. Nov. 21, 2018) (applying judicial estoppel when chapter 13 debtor did not schedule pre-petition counterclaims asserted against a mortgage creditor); *Suntrust Mortg., Inc. v. Lanier*, 2019 WL 4052492 (S.C. Ct. App. Aug. 28, 2019) (finding a chapter 13 debtor lacked standing to raise counterclaims in a foreclosure, a holding that would no longer apply after the Fourth Circuit's decision in *Wilson* and applying judicial estoppel based on the chapter 13 debtor's failure to schedule a claim that arose pre-petition).

After considering the authorities cited above, the Court finds that in the present matter, Debtor did not have a duty to disclose the Lawsuit or to amend his schedules to reflect a cause of action which accrued nearly three years after Debtor confirmed his chapter 13 plan.[16] Further, the Lawsuit was presumably exemptible, and there was no liquidation of the claim within the time frames of the case.  Because the lawsuit was not tried or settled and remained unliquidated throughout the case, Debtor did not realize an increase in income and therefore the circumstance would not have qualified as an existing, substantial and unanticipated condition to serve as a basis for a motion to modify the plan.  *See In re Murphy,* 474 F.3d 143 (4th Cir. 2007).

While the duty to disclose a substantial or significant asset that became part of the estate post-confirmation may be a desirable policy, it was simply not required in this case under the Bankruptcy Code, the Bankruptcy Rules or an order or local rule of this Court. Certainly, without an express obligation, this is not a requirement for which Debtor can be penalized nor may the failure to disclose or amend his schedules constitute a representation to the Court which has been accepted or relied upon.

The Court declines to read into the statute or rules a duty that does not exist, particularly where the duty is being asserted to prejudice a seriously injured debtor and may result in a windfall to the alleged liable parties. *See Martineau*, 934 F.3d at 394 ("'[L]imiting judicial estoppel to those cases in which the facts and circumstances warrant it' help to 'reduce the risk that [its] application . . . will give the civil defendants a windfall.'" (quoting *Slater*, 871 F.3d at 1186)).

This Court expressly holds that Debtor had no duty to disclose the Lawsuit or amend schedules for that purpose in this case. Based on this holding and the Trustee's testimony that no

---

[16]    Debtor had very little incentive not to disclose and have the Lawsuit exempted or abandoned. The Court is convinced from his testimony in his Declaration and the circumstances of this case that he did not know of any need to do so. When he learned of its importance, he acted diligently and promptly.

different action would have been taken had it been previously disclosed, the Court did not rely on or accept the failure to disclose the Lawsuit as a representation or position of Debtor to the Court regarding the assets of the estate.

**Motion to Reconsider Order Reopening Case to Allow Amendment of Schedules**

*Standing to file Motion to Reconsider*

As an initial matter, the Court notes that at no time prior to the closing of Debtor's bankruptcy case did the State Court Defendants have standing to move for or object to any relief in Debtor's bankruptcy case. Debtor was not indebted to the State Court Defendants and the State Court Defendants were not scheduled as creditors or holders of any interests, including any post-petition claims. The State Court Defendants did not file claims or any requests for relief in the case prior to its reopening, and as a result, they were not entitled to any payments under Debtor's chapter 13 Plan or otherwise affected by the administration of the estate or the confirmed Plan. The State Court Defendants do not have an ownership interest in any asset of the estate. They merely have **potential** liability to Debtor as a result of their actions related to a post-petition drunk driving accident that occurred nearly three years after the confirmation of Debtor's plan. Simply put, the State Court Defendants have no financial stake in the bankruptcy proceedings. The State Court Defendants did not rely upon any of Debtor's disclosures prior to the closing of his case. Nonetheless, they now come before this Court as proverbial strangers to this bankruptcy case to assert that the Court's decision to reopen the case should not have occurred.

The State Court Defendants' standing to file the Motion to Reconsider is dependent on the potential effect the reopening of the case and disclosure of the Lawsuit **may** have on their judicial estoppel defense in the Lawsuit, upon which they base a **hope** for a summary escape from liability without a decision on the merits. As the Fourth Circuit has indicated:

Three elements must be satisfied before judicial estoppel will be applied. "First, the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation." *Lowery v. Stovall,* 92 F.3d 219, 224 (4th Cir.1996). The position at issue must be one of fact as opposed to one of law or legal theory. *Id.* "Second, the prior inconsistent position must have been accepted by the court." *Id.* Lastly, the party against whom judicial estoppel is to be applied must have "intentionally misled the court to gain unfair advantage." *Tenneco Chems., Inc. v. William T. Burnett & Co.,* 691 F.2d 658, 665 (4th Cir.1982). **This bad faith requirement is the "determinative factor."** *John S. Clark Co.,* 65 F.3d at 29.

*Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007) (emphasis added).[17]

As indicated by their Motion to Reconsider and Motion in Limine, the State Court Defendants are asking this Court to reconsider its prior Order to Reopen the Case, but at the same time stay out of any determination of what happened in the proceedings before it, in particular, regarding two central issues: whether this Court relied on the failure to disclose the Lawsuit in amended schedules and whether that failure was done intentionally to mislead this Court and gain an unfair advantage.

The correct statement of the interplay between the failure to disclose (or to otherwise omit) a cause of action and a debtor's later ability to prosecute that action has been most recently addressed by the Fourth Circuit in *Martineau v. Wier*. In *Martineau*, the debtor who had suffered

---

[17]    Similarly, the Supreme Court of South Carolina adopted the doctrine of judicial estoppel as it relates to matters of fact in *Hayne Federal Credit Union v. Bailey*, 489 S.E.2d 472, 477 (S.C. 1997). In *Cothran v. Brown*, the Supreme Court of South Carolina provided the elements for judicial estoppel:

(1) two inconsistent positions taken by the same party or parties in privity with one another; (2) the positions must be taken in the same or related proceedings involving the same party or parties in privity with each other; (3) the party taking the position must have been successful in maintaining that position and have received some benefit; (4) the inconsistency must be part of an intentional effort to mislead the court; and (5) the two positions must be totally inconsistent.

592 S.E.2d. 629, 632 (S.C. 2004).

While this Court believes that the effect of any alleged omission as a representation to this Court must be reviewed under the standards of federal law, it is noteworthy that the state law elements of judicial estoppel also require that the party taking the position (here, Debtor) must have received a benefit from it and it must have been made intentionally to mislead the court (here, the U.S. Bankruptcy Court)—factors that do not exist in this case.

a **prepetition** "grisly attack" from multiple stab wounds, failed to later disclose a potential lawsuit (to set aside a settlement related to the attack) under § 521(a) in her bankruptcy schedules in a chapter 7 case. 934 F.3d at 387-88. After the bankruptcy case was closed and the debtor had received a discharge, the debtor brought a lawsuit related to the assault. *Id.* at 388. The defendants in the lawsuit moved to dismiss the action, claiming the debtor lacked standing since the unscheduled cause of action was property of the estate *Id.* Thereafter, the debtor then moved to reopen the case and amend her bankruptcy schedules to disclose and claim a partial exemption in the lawsuit, and the chapter 7 trustee abandoned any interest in it. *Id.* at 388-89. Before the trial court, the defendants raised a judicial estoppel defense due to the debtor's initial failure to disclose the prepetition cause of action, an omission which would be inconsistent with her later pursuit of the lawsuit. *Id.* at 389.

In *Martineau*, the Fourth Circuit stated the standard for such an examination:

As the Supreme Court has explained, judicial estoppel is an equitable doctrine, designed to "protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749–50, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (internal quotation marks omitted). Typically, judicial estoppel is reserved for cases where the party to be estopped – here, Martineau – has taken a later position that is "clearly inconsistent" with her earlier one; has persuaded a court to adopt the earlier position, creating a perception that "either the first or the second court was misled"; and would "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750–51, 121 S.Ct. 1808 (internal quotation marks omitted). Finally, and central to this case, there is the longstanding principle that judicial estoppel applies only when "the party who is alleged to be estopped *intentionally* misled the court to gain unfair advantage," and not when "a party's prior position was based on inadvertence or mistake." *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 29 (4th Cir. 1995) (emphasis added) (internal quotation marks omitted); *accord New Hampshire*, 532 U.S. at 753, 121 S.Ct. 1808 (quoting *John S. Clark*, 65 F.3d at 29).

*Id.* at 393.

Despite the views of the State Court Defendants, whether a debtor intentionally misled this court to gain an advantage or acted in good faith during the case is relevant to the determination of a motion to reopen and thus to their Motion to Reconsider. As indicated herein regarding the Motion to Reconsider, the Court finds that Debtor did not have a legal duty to disclose the Lawsuit or amend his schedules. Further to the extent that he should have to ensure the cause of action was exempted or abandoned, the Court finds that any failure to disclose or amend was inadvertent, and not done intentionally to mislead the Court or to derive an unfair advantage. Moreover, the lack of disclosure did not affect distribution and was not a position on which this Court relied.

The State Court Defendants offered no evidence or argument at the hearing to establish that they have suffered an actual, as opposed to a speculative, injury or that they have a direct and adverse pecuniary interest in the matters presently before the Court and therefore have not satisfied their burden to establish standing to request reconsideration of the Order Reopening Case. [18] Further, to the extent the State Court Defendants rely on their potential judicial estoppel defense to establish standing, the Court agrees with the majority of cases addressing this issue which have found that such a purported pecuniary interest is too remote, too hypothetical, and too speculative to establish standing.[19] *See In re Lopez*, 283 B.R. 22, 27 n. 9 (9th Cir. 2002) (doubting that a litigant in a non-bankruptcy lawsuit has standing to object to a reopening of a bankruptcy case to disclose the lawsuit and questioning whether the potential loss of a judicial estoppel defense "is the sort of harm that would give [the non-bankruptcy litigant] a right to intervene or standing to oppose reopening"). The State Court Defendants' connection to Debtor's bankruptcy case "is merely

---

[18]     While not argued by the State Court Defendants, it appears to the Court that any litigation costs in the Lawsuit are not as a result of Debtor's omission of or failure to disclose the Lawsuit but as a result of any potential liability that resulted from the alleged drunk driving accident.

[19]     Further, the State Court Defendants assume that the reopening of the case and amendment of schedules will be determinative of the judicial estoppel defense in the Lawsuit. However, the ruling on the judicial estoppel defense is up to the State Court and cannot be presupposed, either way, by the parties or this Court.

hypothetical, and even at that, a stretch." *Kreutzer*, 344 B.R. at 640 (concluding that a defendant in a non-bankruptcy lawsuit's assertion of a potential loss of a judicial estoppel defense did not constitute a sufficient pecuniary interest for contesting the reopening of the bankruptcy case).

Similarly, the Court finds that the State Court Defendants have not established an injury in fact under the confines of constitutional standing under Article III of the U.S. Constitution, which is also required to establish standing in a bankruptcy proceeding. Specifically, an injury in fact must be an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical[.]' *Lujan*, 504 U.S. at 560 (internal citations omitted). The purported injuries alleged by the State Court Defendants are not concrete, actual or imminent but speculative and hypothetical.

Previously, the undersigned has held that litigants in a non-bankruptcy action are not parties entitled to challenge the reopening of a bankruptcy case to disclose a previously omitted cause of action. *See, e.g., In re Free*, C/A No. 98-01527-W, slip op. (Bankr. D.S.C. June 6, 2001) (finding a defendant in a tort action brought by debtor had no legitimate standing to object to the debtor's motion to reopen case); *In re Crowley*, C/A No. 97-02053-W, slip op. (Bankr. D.S.C. Sept. 20, 1999) (finding a defendant in a non-bankruptcy case who objected to the reopening of debtor's case "had no direct legal interest at issue in the Bankruptcy case for it had no part to play in that case" and only sought to assert an interest in the Bankruptcy case "to use the failure to list an asset as a shield from liability"); *In re Allphin*, C/A No. 96-72207-W, slip op. (Bankr. D.S.C. November 4, 1997) (noting that the defendant in a non-bankruptcy tort action brought by the debtor is not a creditor or party in interest in the bankruptcy case and "certainly did not rely on the Debtor's failure to list the cause of action in the bankruptcy or the resulting delay in seeking the case reopened").

The majority of courts that have addressed the issue have held that defendants in a non-bankruptcy lawsuit do not have standing as a party in interest to challenge a motion to reopen a bankruptcy case to permit the disclosure of a previously undisclosed cause of action, even if that litigant has asserted a judicial estoppel defense in the non-bankruptcy lawsuit. *See, e.g., In re Riazuddin*, 363 B.R. 117 (10th Cir. B.A.P. 2007) (finding defendant in separate civil suit is only a potential debtor of the debtor and its "claim that its defense in the personal injury case may be affected by the reopening is insufficient to give it a direct interest in the Debtor's bankruptcy case"); *In re Miller*, 347 B.R. 48 (Bankr. S.D. Tex. 2006) (stating that giving a potential defendant in a civil case a voice to challenge a reopening of case merely because a lawsuit may be brought against the potential defendant by the trustee is "like putting the fox in charge of the hen house" and finding no authority from the Bankruptcy Code to find the potential defendant is a party in interest); *Giddens, M.D. v. Kreutzer (In re Kreutzer)*, 344 B.R. 634 (N.D. Okla. 2006) (holding that a defendant in a separate civil case has no standing to challenge a debtor's motion to reopen a case because the defendant was not the debtor, the trustee, or a creditor and no direct interest in the proceeding); *In re Sweeny*, 275 B.R. 730 (Bankr. W.D. Penn. 2002) (finding "[b]ecause [state court defendants] lack any other relation to the instant bankruptcy case, they thus are not parties-in-interest with respect to the same, which means that they lack standing to participate in matters that deal solely with the administration of such case such as, inter alia, the trustee's motion to reopen and application to employ"); *In re Ayoub*, 72 B.R. 808, 812 (Bankr. M.D. Fla. 1987) ("Considering the objection to the Motion to Reopen the estate by Kearney, it is evident that Kearney, the defendant in Circuit Court against whom the jury verdict was granted, has no standing to oppose the same. . . . [T]his is no basis for recognizing his standing to object to the Motion to Reopen the closed case."); *In re Combs*, 2015 WL 3778030 (Bankr. D. Kan. June 16, 2015)

(concluding defendant in separate civil action does not have standing to object); *In re D'Antignac*, 2013 WL 1084214 at *3 (finding state court defendant "is not a party in interest and does not have standing to oppose the Debtor's Motion to Reopen"); *In re Phillips*, 2012 WL 1232008 (Bankr. D.N.J. Apr. 12, 2012) (finding state court defendant was not a party in interest because the defendant does not "hold a legally protected interest that the debtor seeks to affect through course of the bankruptcy"). The undersigned sees no reason to depart from both his prior holdings and the approach taken by the majority of courts.

Further, the lone opinion cited by the State Court Defendants in support of establishing its standing was the opinion in *In re Ingram*, 531 B.R. 121 (Bankr. D.S.C. 2015), because it appears to recognize the arguments made by a non-bankruptcy defendant who asserted a judicial estoppel defense regarding the reopening of the bankruptcy case. However, the judge in *Ingram* expressly indicated that the issue of standing was not argued and that he was not considering whether the defendant in the non-bankruptcy lawsuit had standing to object to the reopening of the bankruptcy case. *Id.* at 123 n. 4. Therefore, the Court does not find the State Court Defendant's arguments convincing.

For the foregoing reasons, the Court finds that the State Court Defendants lack standing to object to the reopening or to seek a reconsideration of the Order Reopening Case. Despite the Court's finding that Defendants lack standing to seek reconsideration of the Order Reopening Case, the Court will nevertheless address the merits of the Motion to Reconsider.

*The Merits of the Motion to Reconsider*

The State Court Defendants moved for the Court to alter or amend the Order Reopening Case pursuant to Fed. R. Civ. P. 59(e), which is made applicable to this proceeding by Fed. R. Bankr. P. 9023. The Fourth Circuit has recognized only three grounds for granting a Rule 59(e)

motion: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. American Nat'l. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). "[R]econsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Id.* "Rule 59(e) motions may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Id.* "[T]he rule permits a district court to correct its own errors, 'sparing the parties and the appellate courts the burden of unnecessary appellate proceedings'" *Id.* (quoting *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995)). The granting of a Rule 59(e) motion is in the discretion of the Court and is reviewed "under the deferential abuse of discretion standard." *Robinson v. Wix Filtration Corp., LLC*, 599 F.3d 403 (4th Cir. 2010).

The State Court Defendants did not allege an intervening change in law or new evidence not previously available. Rather, they alleged that the entry of the Order Reopening Case was a clear error of law and that due to an alleged failure to receive Debtor's Motion to Reopen, the Order Reopening Case must be reconsidered to prevent manifest injustice.

*Manifest Injustice*

The State Court Defendants assert the Court's entry of the Order Reopening Case resulted in a manifest injustice as they allege that their counsel, who asserted judicial estoppel for the Defendants in the state court action, did not receive a copy of Debtor's motion to reopen. They do not dispute the appropriateness of the parties served or addresses included in Debtor's certificate of service for the Motion to Reopen, but simply declare that each of the attorneys for the State

Court Defendants in the Lawsuit did not receive it. The State Court Defendants assert that they would have otherwise objected to the Motion to Reopen.[20]

"[C]ourts are given wide leeway in determining what constitutes manifest injustice for purposes of a motion under Rule 59(e)." *In re Pavilack*, C/A No. 10-0605-jw, slip op. (Bankr. D.S.C. Sept. 20, 2011). Courts within this District have defined manifest injustice "as an error by the court that is 'direct, obvious, and observable[,]'" *Register v. Cameron & Barkley Co.*, 481 F. Supp. 2d 479, 480 (D.S.C. 2007) (quoting *In re Oak Park Calabasas Condominium Ass'n*, 302 B.R. 682 (Bankr. C.D. Cal. 2003)), and have noted that it "occurs where the court 'has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension . . . .'" *King v. McFadden*, C/A No. 1:14-CV-00091-JMC, 2015 WL 4937292, at *2 (D.S.C. Aug. 18, 2015) (quoting *Campero USA Corp. v. ADS Foodservice LLC*, 916 F. Supp. 2d 1284, 1292–93 (S.D. Fla. 2012)).

In examining the issue of service, the Court first observes that "[t]here is no express Code provision or Bankruptcy Rule that requires notice of reopening a case." *In re Killmer*, 501 B.R. 208, 211 (Bankr. S.D.N.Y. 2013) (citing *In re Foster*, 2004 WL 437447, at *1 (Bankr. D.Vt. Mar. 3, 2004)). Some courts have required service of a motion to reopen pursuant to Fed. R. Bank. P. 7004. *See Foster*, 2004 WL 437447, at *1. In such situations, Fed. R. Bankr. P. 7004(b) allows for service of the motion by first class mail. South Carolina Local Bankruptcy Rule 9013-1 provides that the moving party shall file the motion and simultaneously serve on all appropriate parties copies of the motion and a proposed order but does not specify the parties to be served. Debtor used the correct local form for notice of the opportunity to object and hearing mandated by

---

[20]    A timely filed objection would have likely triggered a hearing at which the Court would have considered the very same presentation of testimony and evidence that was presented at the hearing on the Motion to Reconsider. In such an event, the outcome would be the same.

South Carolina Local Bankruptcy Rule 9013-4, which also provides that matters noticed for a

hearing may be removed if no objection is filed.

> In bankruptcy cases:
>
> [a] debtor is not required to provide actual notice to every creditor; rather, a debtor is only required to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to [respond]." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950), ("The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."). Reasonable notice—even to a known creditor—does not require actual receipt of notice by the creditor. *Weigner v. City of New York,* 852 F.2d 646, 651 (2d Cir.1988)[.]

*In re Greenberg*, 526 B.R. 101–02 (Bankr. E.D.N.Y. 2015).

Rule 9006(e) provides that "service of process and service of any paper other than process

or of notice by mail is complete on mailing." 10 Collier on Bankruptcy ¶ 9006.11 states "[t]he

critical event in the service procedure… is the mailing, not receipt, of the papers sought to be

served.  Nonreceipt or nonacceptance of the envelope containing the papers is insignificant and

has no effect on the validity of service."  The Supreme Court has repeatedly held that notice by

first-class mail is sufficient, notwithstanding the Court's obvious awareness that not every first-

class letter is received by the addressee." *Weigner v. City of New York*, 852 F.2d 646, 651 (2d Cir.

1988). For this reason, courts have held that Rule 9006(e) creates a rebuttable presumption that

the paper mailed was received by the party to whom it was sent.  "[P]roof that a letter properly

directed was placed in a post office creates a presumption that it reached its destination in usual

time and was actually received by the person to whom it was addressed." *Hagner v. U.S.*, 285 U.S.

427, 430 (1932). To invoke the presumption, a party must prove that the letter was properly

addressed, stamped, and mailed. *Greenberg*, 526 B.R. at 105 (citing *Hagner*, 285 U.S. at 430).

"Courts have routinely held that 'an affidavit of service is sufficient evidentiary material to raise

the presumption [of receipt after proper mailing.]'" *In re Great Atlantic & Pacific Tea Company, Inc.*, 604 B.R. 650 (Bankr. S.D.N.Y. 2019) (quoting *In re Bernard L Madoff Inv. Sec. LLC*, 2014 WL 1302660, at *4 (S.D.N.Y. Mar. 31, 2014)) (alterations in original).

This Court has similarly held that service by mail creates a presumption of receipt, which may only be overcome by evidence that the mailing was not actually accomplished, and the mere denial of receipt is insufficient. *In re Warren*, 532 B.R. 655, 662 (Bankr. D.S.C. 2015). Even multiple denials of receipt are insufficient to rebut the presumption. *Great Atlantic*, 604 B.R. at 658 (noting that "'no court has held that multiple denials of receipt are sufficient to rebut the presumption of receipt, where proper mailing has been established'" (quoting *Greenberg*, 526 B.R. at 110)).

The presumption is "very strong" and can only be rebutted by specific facts and not by invoking another presumption and not by a mere affidavit to the contrary. *In re Warren,* 532 B.R. 655 (Bankr. D.S.C. 2015); *In re Greenberg,* 526. B.R. 101 (Bankr. E.D.N.Y. 2015). A general denial does not constitute the strong evidence needed to overcome the presumption of receipt. *Bosiger v. US Airways*, 510 F.3d 442 (4th Cir. 2007). In *Bosiger*, the Fourth Circuit observed that if it was to hold that a general denial of receiving notice by mail was sufficient, it would "prolong and undercut the bankruptcy process by civil actions on the part of creditors who failed to pursue their claims when it was timely and appropriate for them to do so." *Id.* at 452-53. One bankruptcy court observed that "[i]f a party were permitted to defeat the presumption of receipt of notice resulting from the certificate of mailing by a simple affidavit to the contrary, the scheme of deadlines and bar dates under the Bankruptcy Code would come unraveled." *Trump Taj Mahal Assocs. v. Alibraham*, 156 B.R. 928, 939 (Bankr. D.N.J. 1993).

If evidence is presented that the sender did not actually accomplish the mailing or that the mail was returned as undeliverable, then the sender would not be entitled to the presumption. *See Warren*, 532 B.R. at 662; *In re Residential Capital, LLC*, 2015 WL 2256683, at *8 (Bankr. S.D.N.Y. May 11, 2015) (holding that the Court cannot presume that notice was received when the notice documents were returned as undeliverable).

In this case, the presumption of receipt applies because Debtor has presented a certificate of service stating that the Motion to Reopen was properly mailed to counsel for the State Court Defendants. The State Court Defendants have not disputed the parties or addresses named in the Certificate of Service, the same as the parties and addresses named for service of their Motion to Reconsider and service of the Order Reopening Case. Nor have the State Court Defendants disputed that the Motion to Reopen was properly stamped and mailed. Conversely, Debtor has presented affidavits stating that the documents were properly addressed, stamped, and mailed. The State Court Defendants' affidavits merely deny receipt and state that their combined failure to receive the Motion indicates that it was not sent, which courts have previously held is insufficient to rebut the presumption.[21] *In re Great Atlantic*, 604 B.R. at 658.

As it appears that service was proper and the State Court Defendants have failed to rebut the presumption that service of the Motion to Reopen on them was accomplished,[22] they have

---

[21]     The Court observes that neither side presented in person testimony regarding the service of the Motion to Reopen, relying solely on the affidavits and declarations submitted in support of their positions. Based on these affidavits and declarations, the Court was left with proverbial "he said, she said" regarding whether the Motion to Reopen was properly served. The State Court Defendants rely upon the reputation of the counsel who deny receipt of the Motion to Reopen. Conversely, the Court is aware that the law firm that filed the motion is the largest consumer filer of bankruptcy pleadings in this District and has established procedures and familiarity for broad service by mail. As there was no opportunity to judge credibility based on live testimony, the Court relies on the presumption that service occurred upon mailing. Even without the presumption, the Court finds Debtor's bankruptcy counsel's familiarity with and procedures for service by mail reliable and more convincing.

[22]     In the second amended joint statement of dispute, the State Court Defendants cited to the Supreme Court of South Carolina's opinion in *Foster v. Ford Motor Credit Company*, 395 S.E.2d 440 (S.C. 1990), which held that under South Carolina law, the denial of receipt of a mailing creates a sufficient issue of fact of whether the mailing occurs. The Court first notes that as bankruptcy proceedings are matters of federal law, the federal procedural rules control

failed to demonstrate to the Court that the entry of the Order Reopening Case resulted in a manifest injustice to them.[23] Therefore, the Court finds that the State Court Defendants have not satisfied their burden to demonstrate reconsideration of the Order Reopening Case under Rule 59(e) is warranted based upon an alleged manifest injustice.[24]

*Clear Error of Law*

The State Court Defendants also assert the Court's Order Reopening Case was a clear error of law, alleging that Debtor did not meet his burden of proof for his bankruptcy case to be reopened, that creditors will not benefit from the reopening and that they will be prejudiced while Debtor would receive unjustified benefits. Again, the Court finds the State Court Defendants' Motion to Reopen must be denied as they lack standing as party in interest to bring such a motion. Nonetheless, their Motion also fails on the merits because there is no clear error of law.

As an initial note, it is a high burden to prevail on a Rule 59(e) motion based upon a clear error of law. As the Fourth Circuit has noted, the court's prior decision does not qualify as a clear

---

this matter. *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965) (noting that federal courts apply federal procedural law even in actions proceeding under diversity jurisdiction). The Court further notes that the holdings in *Foster* appear to be in direct conflict the Fourth Circuit's holdings in *Bosiger*, which held that a general denial of receipt is insufficient to overcome the presumption. Further, it appears to this Court that the presumption would have little value if a mere general denial of receipt was sufficient to overcome it. Therefore, the Court finds *Foster* to not be persuasive or controlling in the present matter.

[23]    At the hearing, the State Court Defendants pointed to the fact that Debtor's certificate of service was dated for March 6, 2020 (indicating service would be accomplished on that date) but was filed with the Motion to Reopen on March 5, 2020. Similarly, when filing the Motion to Reopen on CM/ECF, Debtor's counsel stated the date of service would be March 6, 2020 (resulting in CM/ECF setting the objection deadline as March 20, 2020)  It appears this was the result of the fact that the Motion to Reopen was filed at 9:53 PM on March 5, 2020 and delivery of copies of the pleading could not be made to the post office at that late hour, but would be placed in the mail the following morning on March 6, 2020. SC LBR 9013-3 provides that each pleading filed with the Court shall be accompanied by a certificate of service that indicates the names and addresses of the parties served with the document(s), the manner of service, and the date of the service.  A review of the certificate of service that accompanied the Motion to Reopen included all of the required information under SC LBR 9013-3. The Court finds Debtor's counsel's actions were appropriate and proper under the circumstances and did not affect the validity of the service of the Motion to Reopen.

[24]    A granting of the Motion to Reconsider due to a failure of service would merely provide for a rehearing at which time the Court would consider the same evidence provided by Debtor and the Trustee and would grant the reopening and related relief.

error of law "by being 'just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish.'" *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009).

The reopening of a bankruptcy case is controlled by 11 U.S.C. § 350(b) which provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." Further, Fed. R. Bankr. P. 5010 provides that "[a] case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code." The reopening of cases is a routine and frequent procedure in a bankruptcy court.

The Fourth Circuit has indicated that "[t]he right to reopen a case depends upon the circumstances of the individual case and that the decision whether to reopen is committed to the court's broad discretion." *Hawkins v. Landmark Fin. Co. (In re Hawkins)*, 727 F.2d 324, 326 (4th Cir. 1984). Beyond a case-by-case consideration of the totality of the circumstances, the Fourth Circuit has not set any specific factors a bankruptcy court must consider when determining whether to reopen a bankruptcy case.

In the present matter, considering the specificity of the allegations and requests in Debtor's Motion to Reopen, to which there were no objections by any of Debtor's creditors or the State Court Defendants, and upon the express consent of the Chapter 13 Trustee, the Court found the circumstances met the plain language of § 350 and warranted a reopening of the case to permit Debtor to amend his schedules to disclose the Lawsuit for consideration of further administration and claim an exemption and to file an application to employ counsel.

First, the reopening permitted the administration of an asset and accounting of property of the estate. "Under section 350(b) and Rule 5010, the discovery of an unadministered asset, which was once the sole basis for reopening a case, continues to be a sufficient reason for the court to

44

exercise its power." 3 Collier on Bankruptcy ¶ 350.03 (Lexis 2020). According to the confirmed

chapter 13 Plan and § 1306(a), all post-petition property remained property of the estate. To the

extent that the Lawsuit was property of the estate and not scheduled, § 554 provides that it was not

administered and, therefore, remains property of the estate since it was not abandoned by the

closing of the case. *See In re Stevens*, __ B.R. __, 2020 WL 3607438 (9th Cir. B.A.P. July 2, 2020)

(noting that for a "technical abandonment" to be accomplished under § 554(c), the asset must be

listed in the debtor's schedules); 3 Collier on Bankruptcy ¶ 350.03 (Lexis 2020) ("[I]t is clear that

assets that are not properly disclosed on the schedules are not abandoned and remain property of

the estate that can be administered if the case is reopened."). The reopening of the case allowed

the Court and Trustee to account for that property of the estate and consider it for further

administration, including any relevant determinations of exemption or abandonment, its continued

prosecution by the Trustee or other means to account for its disposition. Importantly, the reopening

provided necessary disclosure of the Lawsuit and opportunity to be heard, which was a clear

benefit to all parties affected by the case.

To properly consider whether further action to administer the Lawsuit was necessary by

the Trustee, the United States Trustee reappointed the Chapter 13 Trustee to serve in the reopened

case. At the hearing on the Motion and Objections, the Court received testimony from the Trustee

(in part by stipulated declaration and in part by direct and cross examination) that she believed that

her prosecution or involvement in the Lawsuit would not be beneficial to the estate (with the costs

outweighing the benefits), that she believed the Lawsuit to be fully exemptible by Debtor and, if

not exemptible, that she would consider the estate's interest in the Lawsuit abandoned upon the

further closing of the case by operation of § 554(c). This testimony was confirmed by her initial

consent to the reopening of the case and her lack of an objection to the exemption or employment requested by Debtor.

The Trustee's testimony further indicated that Debtor had fully complied with his confirmed plan and, "despite not being required to by the bankruptcy code," paid 90% of his total unsecured claims, even receiving a refund of funds. Had the Trustee known of the personal injury lawsuit at the time it was filed, she would have not objected to Debtor's claim of personal injury exemption "because the inclusion of the cause of action would have had no substantive effect on his bankruptcy case" and because the costs of litigation "would be greatly outweighed by any recovery." Furthermore, the Lawsuit was still in its early stages, far from determination, and therefore, contingent and unliquidated even at the close of the bankruptcy case.

Second, the reopening of the case accorded relief to the debtor. In situations where a debtor in good faith inadvertently omitted an asset and/or failed to claim an exemption while the case was pending, the Court finds the debtor should be permitted an opportunity to correct the error before the bankruptcy court and to allow the relevant parties, including the creditors and case trustee to be heard.[25] At the hearing in this case, the Court received a declaration of Debtor's testimony that stated that he was completely unaware of any obligation to advise the bankruptcy trustee or the Court of the accident or the Lawsuit and that he did not intend to mislead the Court or make a misrepresentation, nor did he intend to gain any advantage or benefit in either the state court or this Court. This testimony is entirely credible since as stated earlier no duty to disclose or to amend the schedules was effectively placed upon Debtor by the Plan, local rule or order of the Court. His good faith is further demonstrated by his faithful compliance with the Plan which nearly paid his

---

[25]     Amendments to schedules under Fed. R. Bankr. P. 1009 are granted liberally by the bankruptcy court. *See Tignor v. Parkinson*, 729 F.2d 977, 979 (4th Cir. 1984) ("The clear mandate of [] rule [1009], . . . is to allow amendment freely."). Further, a debtor's exemptions are protected and promoted as they are essential to the underlying policy of the bankruptcy process—a debtor's fresh start.

creditors in full. The declaration of Debtor's state court lawyer similarly stated a lack of knowledge

of the need to report the Lawsuit to the Court, Trustee or Debtor's bankruptcy counsel. While the

Defendants' request to exclude Debtor's testimony was overruled by the Court, it is noteworthy

that the State Court Defendants did not choose to cross examine Debtor or otherwise present

evidence to refute his testimony. Based on this evidence, the Court has confirmed that Debtor acted

in good faith and acted inadvertently and not intentionally to mislead the Court, Trustee or creditors

for any unfair advantage or benefit and therefore should be accorded relief and be allowed to

reopen his case and make amendments to disclose and continue the prosecution of the Lawsuit

upon its exemption or abandonment.[26]

Third, the characterization asserted by the State Court Defendants of Debtor's omission as

an intentional act to mislead the Court and as a serious affront to the integrity of the bankruptcy

court process itself serves as sufficient cause for the Court to reopen the case and examine the

circumstances, including any need for sanctions, criminal referrals, conversion of the case or other

remedies for the alleged wrongdoings. Certainly, it is within this Court's right and duty to examine

such matters and to protect the integrity of the proceedings before it.

Finally, the Court recognizes that the Fourth Circuit's decision in *Martineau v. Wier*, which

addresses the application of a judicial estoppel defense to a pre-petition cause of action that was

not initially disclosed by a debtor in her schedules, instructs that a specific factual inquiry to the

debtor's actions and intentions in any failure to disclose is required. *Martineau*, 934 F.3d at 394

(citing *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001)). In doing so, it **soundly rejected**

---

[26]     As a practical matter, Debtor's fresh start may be dependent on his prosecution of the Lawsuit to address his post-confirmation bills and expenses, including those significant expenses related to his injuries suffered in the accident at issue.

the presumption of bad faith and intentional conduct approach established in *Coastal Plains* and

implicitly asserted by the State Court Defendants herein. *Id.* at 387.

In *Martineau*, the Fourth Circuit also indicated that a court considering the application of

judicial estoppel defense in similar circumstances may consider as relevant whether the debtor

attempted to amend the disclosures in the bankruptcy court and whether the bankruptcy court

reopened the case to allow the amendment. *See Martineau*, 934 F.3d at 395–96. The Fourth Circuit

emphasized that "[b]ankruptcy courts have multiple ways of protecting their own integrity against

fraudulent nondisclosures. Such courts may revoke a discharge and reopen long-closed bankruptcy

proceedings in they suspect fraud; impose sanctions, or even refer debtor for criminal prosecution."

*Id.* at 395 (internal citations omitted). Considering the holdings in *Martineau*, the Court finds

further reason to conclude the reopening of this case was appropriate.[27]

---

[27]    Two opinions from the U.S. District Courts for the District of South Carolina have suggested that a debtor's efforts to reopen a bankruptcy case to amend schedules only after an opponent raised the non-disclosure to the debtor's attention is not relevant to judicial estoppel considerations—*Evans v. Allied Air Enterprises, Inc.*, 2011 WL 4548307 (D.S.C. Sept. 30, 2011) *as reconsidered in* 2012 WL 2572266 (D.S.C. July 2, 2012)  and *Wright v. Guess*, 2010 WL 348377 (D.S.C. Jan. 25, 2010).  However, both of these District Court opinions are factually distinguishable from the present matter and were issued prior to Fourth Circuit's clarification of the law provided in its 2019 decision in *Martineau*.

In *Wright*, the court addressed the application of judicial estoppel when a chapter 13 debtor did not schedule a **pre-petition** employment discrimination claim until after the defendants raised a judicial estoppel defense in the employment discrimination litigation.  The *Wright* court stated that "[c]ourts repeatedly reject the argument that judicial estoppel should not be applied when the debtor-plaintiff has attempted to remedy an omission by amending her bankruptcy filings." Similarly, in *Evans*, the court addressed the application of judicial estoppel when a chapter 7 debtor did not schedule a **pre-petition** employment discrimination claim and cited to *Wright* for the same proposition.

However, *Martineau* holds differently, finding that a bankruptcy court's consideration of whether to permit the debtor-plaintiff to amend schedules to disclose the previously omitted asset was a relevant consideration for the trial court in determining whether to apply judicial estoppel. In addition, the *Wright* and *Evans* courts applied a presumption of bad faith as to the debtor-plaintiffs' non-disclosure, which has since been soundly rejected by the Fourth Circuit in *Martineau*.

The cases cited by the *Wright* court also applied the presumption of bad faith rejected by the Fourth Circuit: *In re Superior Crewboats, Inc.*, 374 F.3d 330 (5th Cir. 2004), *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314 (3d Cir. 2003), and *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002). In *Superior Crewboats*, the Fifth Circuit addressed the application of judicial estoppel to an undisclosed **pre-petition** tort claim and held that the debtor-plaintiff's wrongful intent was not in dispute due to the presumption of bad faith and therefore, a reopening of a bankruptcy case to disclose the pre-petition claim would be an abuse. Likewise, in *Krystal*, in addressing the application of judicial estoppel to claims not disclosed in a **chapter 11 debtor's amended disclosure statement**, the Third Circuit applied a presumption of bad faith for the debtor's non-disclosure and indicated that a later amendment to disclose would create an "unfair 'escape hatch'" that would reward the debtor's

*In re Ingram*

The State Court Defendants also argue that the Court's Order Reopening Case was a clear error of law, alleging that in such circumstances, the reopening must only occur if the reopening will result in a distribution to creditors. In support, the State Court Defendants rely upon the opinion of *In re Ingram*, 531 B.R. 121 (Bankr. D.S.C. 2015), a non-binding opinion from another bankruptcy judge in this District. In *Ingram*, the chapter 13 debtor sought to reopen a closed case for the purposes of amending schedules to list a cause of action that accrued post-petition **for the express purpose of paying creditors**. *Id.* at 122–23 The Court primarily held that the sixty-month applicable commitment period had passed and that there was no means to distribute to creditors and therefore the motion was denied as futile. *Id.* at 125–26. As stated earlier, this Court does not believe that relief under § 350(b) is limited only to the cases where distributions can still be made to creditors. [28]

───────────────

lack of candor (based upon the presumption).  Also, in *Burnes*, the Eleventh Circuit addressed the application of judicial estoppel to a claim that was not disclosed by the debtor as required by an **Order Converting Case to Chapter 7**, applying a presumption of bad faith to the non-disclosure and denying a debtor-plaintiff's request to reopen the bankruptcy case to make the disclosure.

It is important to note that the Eleventh Circuit has since revisited the holdings in *Burnes*, rejecting the presumption of bad faith in favor of a fact intensive inquiry as to whether a non-disclosure was in bad faith in an *en banc* decision, *Slater v. United States Steel Corp.*, 871 F.3d 1174 (11th Cir. 2017). In *Slater*, the Eleventh Circuit noted that they had "overlooked that bankruptcy courts do not necessarily view such omission as establishing a debtor's intent to mislead the bankruptcy court" and that "it strikes [them] as inconsistent with these principles— which recognize that omissions occur and liberally allow amendment and correction of disclosures—to infer that a debtor who failed to disclose a lawsuit necessarily meant to manipulate the bankruptcy proceedings." The Eleventh Circuit saw "no good reasons why, when determining whether a debtor intended to manipulate the judicial system, a district court should not consider the bankruptcy court's treatment of the nondisclosure[,]" including whether the bankruptcy court permitted a reopening of the case to allow for the disclosure.

When viewed under the lens that a debtor's omission of a claim is assumed to be in bad faith, a blanket denial of requests to reopen a bankruptcy case to provide disclosure may appear appropriate.  However, in the present matter, the legal landscape has shifted as a result of the Fourth Circuit's holdings in *Martineau*. Bad faith cannot be presumed and a bankruptcy court's determinations of whether to reopen a bankruptcy case to permit disclosure are encouraged by the Fourth Circuit as a relevant consideration in determinations related to a judicial estoppel defense.

[28]    The Court also notes that *Ingram* relied heavily on the completion of the 60-month commitment period. However, in the present matter, the record is unclear whether the 60-month commitment period had concluded in Debtor's case. Section 1325(b)(1)(B) provides that the applicable commitment period begins on the date that the first payment is due under the plan. While there is a split amongst courts as to what constitutes the first payment due under the plan, the Fourth Circuit has determined the commitment period begins not from the petition or confirmation date,

In *Ingram*, the court selected a three-factor test used by another bankruptcy judge from the

U.S. Bankruptcy Court for the Northern District of Georgia in 2010 to determine whether a

bankruptcy case should be reopened to administer a previously undisclosed cause of action: "(1)

the benefit to the debtor; (2) the prejudice or detriment to the party in the pending litigation; and

(3) the benefit to the debtor's creditors." *Id.* at 123 (citing *In re Tarrer*, 273 B.R. 724, 732 (Bankr.

N.D. Ga. 2010)).[29] The *Ingram* court found that the first two factors of the test were neutral on the

---

but upon the first payment made after confirmation. *See West v. Costen (In re Costen)*, 826 F.2d 1376, 1378 (4th Cir. 1987) (finding five-year period permitted started from the date of the first payment after the plan was confirmed); *In re Stroud*, C/A No. 07-04502-JW, slip op. (Bankr. D.S.C. Mar. 5, 2008) (overruling an objection to a modified plan that provided for a payment more than 5 years after the case was filed). The Fourth Circuit also held in *Costen* that procedural delays in a chapter 13 case that were not attributable to the debtor would not be counted towards the debtor's commitment period. *See Costen*, 826 F.2d at 1378–79 (holding that "the [four-month] delay beyond the plan period, if any, was justified by the procedural developments necessary for the bankruptcy court to implement [debtor's] final request to complete the plan").

As Debtor's plan was confirmed on July 25, 2013, it appears Debtor's commitment period began with the plan payment due in August of 2013. The Trustee's Final Report and Account filed on September 12, 2018 indicated that "the case was completed on 5/24/2018" and that sixty months had passed from the filing of the case to the date of the last payment. As Debtor's case was filed on May 16, 2013, this would appear to suggest that Debtor last made a payment in May of 2018, 58 months after the plan was confirmed. The 13 Network records submitted into evidence by Debtor and verified by the Chapter 13 Trustee indicated that the "Last Receipt Date" was June 27, 2018 in an amount of $414.92, 59 months after the plan was confirmed. However, the Report also showed Debtor received refunds of overpayments (the sum of which would have paid Debtor's allowed unsecured creditors in full). Further, while Debtor's case remained open several months after the last payment that Debtor made to the Trustee in order for the Court to complete procedural administrative items (which were not attributable to Debtor), it appears under *Costen* that these months would not contribute to the expiration of the commitment period. Therefore, solely for purposes of distinguishing *Ingram*, it is unclear to the Court that Debtor's 60-month commitment period has been exceeded.

[29]      The *Ingram* court also indicated that a chapter 13 debtor has a purported ongoing duty to disclose post-petition assets, citing to two cases: *Cotita v. Verizon Wireless*, 54 F. Supp.3d 714 (W.D. Ky. 2014) and *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002). In *Cotita*, unlike the case before the Court, the debtor specifically acknowledged that he understood he had a continuing duty "to inform the trustee about his or her assets and income during the pendency of the case" and the court relied upon an unpublished Sixth Circuit opinion, *Kimberlin v. Dollar General Corp.*, 520 F. App'x 312 (6th Cir. 2013) for the proposition that "applying judicial estoppel under these circumstances recognizes the importance of the bankruptcy debtor's affirmative and ongoing duty to disclose assets, including unliquidated litigation interests." The *Kimberlin* court cited to three cases for this proposition, each of which dealt with causes of action that **arose pre-petition** (with disclosure clearly required under § 521(a)(1)) **or that were required to be disclosed as an express provision of an order converting the case or under a chapter 11 disclosure statement.** *See White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472 (6th Cir. 2010)(addressing the nondisclosure of a prepetition claim); *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002) (addressing the nondisclosure of a claim ordered to be disclosed as part of an order converting case); *In re Coastal Plains, Inc.*, 179 F.3d 197 (5th Cir. 1999) (addressing the nondisclosure of a prepetition claim and a claim omitted from a chapter 11 disclosure statement).  Without explanation, the *Kimberlin* court also appears to have incorrectly extended such an obligation to assets acquired by a chapter 13 debtor post-petition, citing to § 541(a)(7), the Code provision providing that interest in property acquired by the estate (and not the individual debtor personally) is property of the estate.

In addition, in *Burnes*, which has since been reversed by *Slater v. United States Steel Corp.*, 871 F.3d 1174 (11th Cir. 2017),  the debtor was required by the express language of the order converting the case to chapter 7 to

basis that the reopening of the case to amend schedules may have a corresponding benefit to the debtor and detriment to the state court litigant due to the effect on a potential judicial estoppel defense in the state court litigation. *Id.* Therefore, the court focused only on how the reopening of the case would benefit creditors. *Id.* Finding that no further administration or distribution to creditors was possible, the court found that the debtor failed to meet the burden of showing cause to reopen the case and therefore, denied the motion to reopen. *Id.* at 125–26. The court in *Ingram* found that the "reopening would serve no purpose . . . ." *Id.* at 123 n.4.

This Court finds the State Court Defendants' reliance on *Ingram* misplaced for a number of reasons. First, the facts in *Ingram* are distinguishable, and it is not binding precedent. The Ingram court did not formally consider the standing of the parties asserting judicial estoppel, nor did it have the benefit of the instructive holdings in the *Wilson* and *Martineau* cases. The debtor in *Ingram* sought to continue the bankruptcy case until the litigation was resolved in order to potentially disburse any proceeds to creditors. As a result, the issue of whether the debtor may continue to disburse proceeds to creditors was of central concern. In the present matter, Debtor is not seeking to disburse any of the proceeds to creditors, but to disclose the Lawsuit, in order for the Court's consideration of its exemption or abandonment so that he may continue to prosecute the Lawsuit to recover for his injuries as allowed by state law.

The Fourth Circuit has not set forth any factor test for determining if a case may be reopened to permit a debtor to amend schedules to disclose an asset, leaving it to the bankruptcy court's broad discretion. [30]  In the present case, the Court relied on the plain language of the

---

amend schedules to disclose any new post-petition assets and is therefore factually distinguishable from the present matter. 291 F.3d at 1284. Therefore, all of the authority relied upon in *Ingram* for a duty to disclose is called into question.

[30]     The Court notes that there is a split amongst courts regarding whether Fed. R. Bankr. P. 1009 or Fed. R. Bankr. P. 9006 controls the amendment of schedules upon the reopening of a bankruptcy case. *Compare In re Mendoza*, 595 B.R. 849 (10th Cir. B.A.P. 2019) (finding Fed. R. Bankr. P. 1009 controls and a debtor may freely

controlling statute, which provides as grounds the administration of assets, according relief to the debtor and other cause. Considering the wide discretion that the Fourth Circuit has granted bankruptcy courts to determine whether to reopen the case, the Court does not find it is confined to the reasoning of *Ingram*.[31]

Based on the totality of the circumstances of the case and the reasons stated above,[32] the Court found, in its discretion, that the reopening of the case and requested relief therein were warranted in this matter and further finds that the Motion to Reconsider is denied.

### Objection to Debtor's Claimed Exemption

The State Court Defendants also objected to Debtor's claim under South Carolina law for an exemption in the recovery, if any, from the personal injury Lawsuit. The thrust of the Defendant's objection is that, depending on the type of damages, if any, that are ultimately awarded, some damages (such as lost wages) may fall outside the South Carolina exemption for bodily injuries.

---

amend schedules upon the reopening of a closed case) *with In re Wilmoth*, 412 B.R. 791 (Bankr. E.D. Va. 2009) (finding Fed. R. Bankr. P. 9006 controls and therefore, a debtor must show excusable neglect prior to amending schedules after the reopening of a closed case). The Fourth Circuit has not yet addressed whether Fed. R. Bankr. P. 1009 or Fed. R. Bankr P. 9006 would control in such matters. While the undersigned believes that Fed. R Bankr. P. 1009 would control upon the reopening of the bankruptcy case, the Court nonetheless finds in the present matter that Debtor established sufficient excusable neglect to warrant an amendment of the schedules based upon the totality of the circumstances. Specifically, as already discussed, there is no defined duty to report the post-confirmation Lawsuit, Debtor was not aware of any duty to report the Lawsuit and acted in good faith in his bankruptcy case and his dealings regarding the Lawsuit. Any delay was commensurate with Debtor's learning of a possible issue with the disclosure of the Lawsuit and Debtor acted quickly to disclose the Lawsuit upon learning of any possible issue. Finally, there is no prejudice to the estate as indicated by the Chapter 13 Trustee and as reflected by the lack of objections from Debtor's creditors.

[31] The undersigned also finds the three-factor test utilized in *Ingram* would be too limiting in most relevant situations. The first two factors of the test would never be considered due to the corresponding benefit and detriment to each of the parties in the non-bankruptcy litigation. As a result, the test devolves into only a question of whether the debtor can disburse estate assets for the benefit of creditors. This limited consideration is in direct conflict with the language of § 350(b), which provides that, in addition to the administration of assets, a reopening may be granted "to accord relief to the debtor and for other cause," and the broad discretion recognized by *Hawkins*.

[32] The Defendants should also not be allowed to assert arguments that should have been raised during the consideration of the Motion to Reopen. *See Pac. Ins. Co.*, 148 F.3d at 403 ("Rule 59(e) motions may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance.").

Initially, the Court finds that the State Court Defendants lack standing to object to Debtor's claim of an exemption in any recovery in the State Court Lawsuit. As admitted by counsel for the State Court Defendants at the hearing, the granting or denial of Debtor's claimed exemption by the bankruptcy court will have no effect on their liability in the Lawsuit. The State Court Defendants have failed to establish any concrete or actual injury or pecuniary interest in the Court's determinations of whether Debtor has a proper exemption in the Lawsuit to allow them to challenge the merits of the claimed exemption. To permit objections in such circumstances invites unnecessary pleadings from uninterested parties and may prolong matters that waste the resources of the Court. For these reasons, the Court finds the State Court Defendants have failed to establish standing to object to Debtor's claimed exemption, and their objection is overruled. *See In re Bruno*, 553 B.R. 280 (Bankr. W.D. Penn. 2016) (denying an objection to exemption because the objecting party failed to demonstrate an injury in fact as a result of the claimed exemption).

Beyond the pleading filed by the State Court Defendants, neither the Chapter 13 Trustee nor any of Debtor's creditors objected to Debtor's claimed exemption in the Lawsuit within the 30 days after service of the amended schedules claiming the exemption, and therefore, the exemption is deemed valid. *See* 11 U.S.C. § 522(l) (2020); Fed. R. Bankr. P. 4003(b).

Section 522(l) of the Bankruptcy Code provides the procedure for asserting an exemption. Specifically, it provides that "[t]he debtor shall file a list of property that the debtor claims as exempt" and "[u]nless a party in interest objects, the property claimed as exempt on such list is exempt." Rule 4003(b) of the Federal Rules of Bankruptcy Procedure provides that a party in interest may file an objection to the list of property claimed as exempt . . . within 30 days after amendment to the list or supplemental schedules is filed . . . ." Rule 4003(c) provides that "the objecting party has the burden of proving that the exemptions are not properly claimed[; and]

[a]fter hearing on notice, the court shall determine the issues presented by the objections." Further, a chapter 13 debtor may claim an exemption in property acquired post-petition. *See In re Walley*, 525 B.R. 320, 324–25 (Bankr. E.D. Va. 2015) (overruling the chapter 13 trustee's objection to an exemption claimed in debtor's proceeds from a personal injury lawsuit resulting from a post-petition motor vehicle accident).

The State Court Defendants offered no evidence at the hearing on the objection and failed to meet their burden under Fed. R. Bankr. P. 4003. No other timely or otherwise valid objections were filed to Debtor's claimed exemption within the 30 days after Debtor filed his amended exemption. The Chapter 13 Trustee indicated that she is not objecting to the exemption because of South Carolina's generous exemption provided for personal injury lawsuits under S.C. Code Ann. § 15-41-30(A)(1)(b)(12)(b) and because no benefit to the estate will be derived by objecting as the expenses associated therewith would outweigh the remaining amount of unpaid claims of unsecured creditors ($792). Pursuant to the Bankruptcy Code and Rules, upon the expiration of the 30-day period without a valid or timely objection, the exemption became final. *See Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992) (noting that upon the expiration of the 30-day period without an objection, § 522(l) made the property exempt and finding deadlines produce finality); *In re Sylvia*, 236 B.R. 128, (Bankr. D. Conn.1998) (finding that a creditor's argument that the court should, *sua sponte*, deny the debtor's claim for exemption is unavailing in light of *Taylor v. Freeland & Kronz)*.

Further, in as much as the State Court Defendants argue that Debtor's conduct in omitting the asset was an intentional concealment and done in bad faith, the Court also notes that it would lack the authority pursuant to § 105(a) of the Bankruptcy Code to disallow Debtor's claimed exemption based on any alleged bad faith conduct even if such conduct existed. In *Law v. Siegel*,

571 U.S. 415 (2014), the United States Supreme Court indicated that a bankruptcy court may not revisit a debtor's entitlement to an exemption once it has become final and that federal law does not permit a bankruptcy court to limit an exemption based upon bad faith conduct of the debtor, including the fraudulent concealment of an asset alleged to be exempt. Courts have generally read *Law v. Siegel* to prevent a bankruptcy court from disallowing an amendment of schedules to claim an exemption based on allegations of bad faith under § 105(a). *See, e.g., In re Elliott*, 523 B.R. 188, 194 (9th Cir. BAP 2014) ("[C]ourts can no longer deny claimed exemptions or bar amendments to exemptions on the ground that the debtor acted in bad faith, when no statutory basis exists for doing so."); *In re Scotchel*, 2014 WL 4327947 (Bankr. N.D. W.Va. Aug. 28, 2014) ("[T]he emerging view of courts interpreting *Law* have held that courts no longer have the discretion to deny an amended exemption based upon equitable considerations such as a debtor's bad faith or prejudice to creditors."); *In re Reade*, 2014 WL 7359053 (Bankr. C.D. Cal. Dec. 23, 2014) ("This court lacks the authority to disallow the Debtor's claimed homestead exemption based on section 105(a) whether indirectly by denying leave to amend or directly by disallowing the exemption, because doing so would be clearly irreconcilable with *Law*.")

While *Law v. Siegel* indicated that a bankruptcy court may limit a state law exemption based upon bad faith conduct of the debtor if such a limitation was allowed under state law, the Court is unaware of any South Carolina law, (nor has any party cited to any authority under South Carolina law) that permits a limitation of a personal injury exemption upon an allegation of bad faith conduct by a debtor.[33]

---

[33]    The Court observes that under S.C. Code Ann. § 15-41-30, an exemption claimed in an individual retirement account may be subject to reduction to the extent the debtor fraudulently conveyed funds into the account. However, this is expressly set forth in the language of the statute under § 15-41-30(a)(13), which provides as exempt "[t]he debtor's right to receive individual retirements" but that "[a] claimed exemption may be reduced or eliminated by the amount of a fraudulent conveyance into the individual retirement account or other plan." S.C. Code Ann. § 15-41-30(A)(13); *see also First Citizens Bank and Trust Company, Inc. v. Blue Ox, LLC*, 812 S.E.2d 418, 421 (S.C. Ct. App. 2018) (determining whether a reduction of an exemption is appropriate for an alleged fraudulent conveyance into an

As the exemption became final upon no valid objection being filed within the 30 days after the filing of Debtor's amended schedules and because the State Court Defendants have no standing to object and failed to meet their burden of proof, the exemption is allowed and recognized.

### Application to Employ

The State Court Defendants also object to Debtor's application to employ his state court trial attorney based upon Debtor's failure to meet the requirements of § 327 and based upon the request being an improper use of "*nunc pro tunc*" approval.

Formally, the State Court Defendants object to Debtor's application to approve employment of his personal injury attorney, arguing that Debtor failed to seek prior court approval in compliance with 11 U.S.C. § 327(e) and Fed. R. Bankr. P. 2014(a) and he should not be allowed to seek approval *nunc pro tunc* under the Supreme Court's recent decision in *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano,* 140 S.Ct. 696, 700-01 (2020).

Section 327(e) provides:

The trustee, with the court's approval, may employ for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.[34]

---

IRA). There is no similar limitation for exemptions claimed for the "payment on account of bodily injury of the debtor" under § 15-41-30(a)(12)(b).

[34]    Courts are split regarding the issue of whether 11 U.S.C. § 327 applies to the employment of professionals by a chapter 13 debtor during a bankruptcy case. *See In re Blume,* 591 B.R. 675, 679 (Bankr.E.D. Mich. 2018) (recognizing split). Many courts find that the plain language of the statute does not support the interpretation that § 327 applies to chapter 13 debtors. *See Blume,* 591 B.R. at 679; *In re Gilliam,* 582 B.R. 459, 465 (Bankr. N.D.Ill. 2018); *In re Jones,* 505 B.R. 229, 231 (Bankr. E.D.Wis. 2014); *In re Gorski,* 519 B.R. 67, 71 (Bankr S.D.N.Y. 2014); *In re Scott,* 531 B.R. 640 (Bankr. N.D. Miss. 2015); *In re Maldonado,* 483 B.R. 326 (Bankr. N.D. Ill. 2012); *In re Gutierrez,* 309 B.R. 488, 500-01 (Bankr. W.D.Tex. 2004); *In re Young,* 285 B.R. 168 (Bankr. D. Md. 2002).   These courts reason that the better approach is that neither the chapter 13 trustee nor the chapter 13 debtors have to seek court approval to hire counsel under § 327.   *Id.* at 232. By its terms, § 327 applies to the "trustee." *See* 11 U.S.C. § 327. Unlike chapters 11 and 12 of the Bankruptcy Code, chapter 13 does not decree that a chapter 13 debtor has the rights or performs the same functions or duties of a trustee. *See In re Jones,* 505 B.R. at 231 (citing 11 U.S.C. §§ 1107(a) and 1203). Nevertheless, an attorney representing a debtor in a case or in connection with a case is required to file with the Court a statement of compensation to be reviewed for reasonableness under § 329 and Fed. R. Bankr. P. 2016(b).

Initially, the Court finds the State Court Defendants lack standing to object to the application, which was an apparent blatant attempt to weaken or delay the prosecution of the Lawsuit brought against them. The State Court Defendants offered no evidence or argument at the hearing on this objection and in fact made no attempt to demonstrate an actual or concrete injury from or a pecuniary interest in the Court's determination of the application. Further, as a matter of policy, the Court sees no benefit to permitting an opposing party in a non-bankruptcy lawsuit to object to an application to employ counsel based solely on the fact that there is a potential or pending lawsuit outside of the bankruptcy court. Any asserted injury or pecuniary interest is too remote, if not nonexistent.

As previously noted, according to the Fourth Circuit's decision in *Wilson*, Fed. R. Bankr. P. 6009 and Fed. R. Civ. P. 17(a) provided that Debtor could prosecute the Lawsuit in state court **in his own name in any tribunal** without the prior approval of this Court during the chapter 13 case. *Wilson*, 717 F.3d at 343-44. In addition, the cause of action remains unliquidated and the compensation requested by Debtor's state court trial lawyer is the standard contingency fee allowed in similar actions and only accrues upon a successful recovery for Debtor.

Finally, the Court notes that it has previously determined herein that the cause of action is fully exempted under state law and thus no longer property of the bankruptcy estate and notes that the Trustee has indicated that upon the reclosing of the case, the Lawsuit will be abandoned. In either circumstance, the Lawsuit will no longer be property of the estate and Debtor may hire (or

---

This Court finds the latter approach to be well reasoned and concludes that § 327 is not applicable to the post-petition employment of counsel for representation in connection with an exempted or abandoned personal injury lawsuit. While not directly on point, this interpretation is consistent with this Court's previous holding in *In re Overstreet,* that chapter 13 debtors who employed professionals pre-petition were not required to obtain court approval of their employment even if the professional remains employed and continues to work on the matter post-petition. C/A No. 07-05397-JW, slip op. (Bankr. D.S.C. Mar. 5, 2010). As indicated in *Overstreet,* court approval of the professional's compensation would be required under § 329.

ratify the hiring) of whatever counsel he wishes for the Lawsuit.[35] The requirements for employment asserted by the State Court Defendants do not apply here. For all of these reasons, the Court overrules the State Court Defendants' objection and approves, to the extent necessary, the employment of Debtor's trial counsel in the personal injury Lawsuit.

## CONCLUSION

For the foregoing reasons, the Court denies the State Court Defendants' Motion to Reconsider and overrules their Objection to Exemption and Objection to the Application to Employ. Therefore, the Court finds that Debtor's claimed exemption in the Lawsuit is final and may not otherwise be challenged. Finally, as to Debtor's Application to Employ, the Court approves the Application and disclosure to the extent necessary. Therefore, according to the terms of the Order Reopening Case, this case shall be closed upon the entry of this Order, which further operates as an abandonment of the lawsuit. Debtor may continue to prosecute the Lawsuit in his name and for his benefit.

**AND IT IS SO ORDERED.**

Columbia, South Carolina
July 17, 2020

---

[35]     Debtor attached to his Plan a Statement in Support of Confirmation, which at the time was required by the undersigned's Chambers Guidelines. The Statement in Support of Confirmation included, among other items, an understanding of Debtor that he will not employ professionals without advanced authorization of the Court. The Court notes that the Statement in Support of Confirmation is not incorporated in or part of the Chapter 13 Plan and the Order Confirming the Chapter 13 Plan did not include a similar requirement. After full consideration, the Court finds that Statement is not controlling and is immaterial to this matter based upon the rulings contained in this Order.